Opinion issued April 6, 2006



















In The
Court of Appeals
For The
First District of Texas




NO. 01-05-01154-CV




IN RE CARNIVAL CORPORATION, Relator




Original Proceeding on Petition for Writ of Mandamus




OPINION ON REHEARING
          Relator Carnival Corporation seeks mandamus relief from a death penalty
sanction imposed by the trial court.


 Carnival contends the trial court abused its
discretion when, as its first order in this discovery dispute, it struck Carnival’s
pleadings and entered judgment against Carnival on all liability issues. We
conditionally granted mandamus relief on January 27, 2006. The real party in interest
moved for rehearing. We grant the motion, withdraw the opinion dated January 27,
2006, and issue this opinion in its stead. Our disposition remains unchanged.
          We conditionally grant mandamus relief.
FACTS
          Carnival operates a cruise line from the Port of Galveston, Texas. In February
2002, Melody Allison, the real party in interest, joined her mother, Dorothy Mueller,
on a four-day, round-trip cruise to Mexico on a Carnival ship known as the
“Celebration.” Mueller had suffered a stroke in early 2000 that required her to wear
a feeding tube, so Allison inquired with Carnival’s “Special Needs Desk” before the
cruise to ensure that care would be available for her mother aboard the ship. Allison
understood that care would be available. 
          Carnival boarded one doctor and three nurses for the voyage. During the
cruise, Mueller’s feeding tube became dislodged. According to Allison, Carnival’s
medical personnel were unable or unwilling to reinsert the tube or make other
treatment available. Three weeks after the cruise, medical personnel surgically
reinserted the feeding tube. The surgery triggered a massive stroke, incapacitating
Mueller.
          In December 2002, Allison sued Carnival, North Channel Travel (her travel
agent), John Doe (described as “a [ship] physician whose identity is not currently
known”), and Jane Doe (described as “a [ship] nurse whose identity is not currently
known”). Allison alleged negligence, breach of contract, breach of warranty,
deceptive trade practices, and fraud.
          In February 2003, in response to Allison’s requests for disclosure, Carnival
identified Dr. Chris Uche, of the United Kingdom, and Constance Jackson, of the
United States, as the medical personnel aboard the Celebration during the relevant
period. Allison added Uche and Jackson as defendants, and served Jackson with
suit.


 In July 2003, Carnival supplemented its response with the name and address
of nurse Claudia Petrescu of Romania.


 Allison added Petrescu as a defendant. 
          In August 2003, Allison unsuccessfully attempted service on Uche at the
London address Carnival provided. According to the process server, Uche did not
live at that address, although a person at the address stated that she knew Uche. 
Allison moved for substituted service of Uche through Carnival.


 Carnival responded
that such service would violate due process under the United States Constitution and
the Hague Convention


 because Uche was an independent contractor and a British
national. The trial court denied the motion.
          In June 2004, Allison moved for substituted service of Uche and Petrescu
pursuant to the Hague Convention, Letters Rogatory, or through private process
service.


 Although the trial court granted the motion, Allison never attempted such
service. Rather, in March 2005, Allison noticed Uche and Petrescu for deposition
through Carnival. Carnival filed a motion to quash on the grounds that these
individuals were independent contractors and foreign nationals. Allison moved to
compel Carnival to produce Uche and Petrescu for deposition and for death penalty
sanctions upon any refusal, but the record does not reflect that the trial court ever
heard and ruled upon the motion. 
          In August 2005, Allison located Uche in Georgia and served him with suit, and
Allison again noticed the deposition of Petrescu through Carnival. Carnival again
moved to quash the deposition, representing that Petrescu had retired from Carnival
and was living in Romania. Allison filed a supplemental response to Carnival’s
motion to quash and again moved for death penalty sanctions for Carnival’s failure
to produce Petrescu for deposition. The trial court granted a default judgment against
Uche.
          In November 2005, the trial court held a hearing on Carnival’s motion to quash. 
Uche appeared at the hearing with his own counsel. At its conclusion, the trial court
granted Allison’s motion for death penalty sanctions as follows:
Carnival, by its persistent pattern of evading discovery, giving false
responses to discovery, and refusing to engage in discovery in good
faith, has stepped far over the lines that would allow this Court to assess
death-penalty sanctions. Its behavior has been brought to Carnival’s
attention repeatedly during the course of the case, and the Court has
given Carnival opportunities to deal responsibly. Carnival’s refusal to
produce witnesses at deposition combined with misleading and false
answers to discovery require the imposition of substantial sanctions. 
Therefore it is, ORDERED that Defendant Carnival Corporation’s
pleadings be stricken and a judgment in favor of Plaintiff on all liability
issues is entered, with damages and attorney’s fees to be assessed after
hearing. 
 
It is from this order, signed November 21, 2005, that Carnival seeks mandamus relief. 
STANDARD OF REVIEW
          A party is entitled to mandamus relief if a trial court abuses its discretion and
the party has no adequate remedy by appeal. Walker v. Packer, 827 S.W.2d 833,
839–40 (Tex. 1992). A trial court abuses its discretion if “it reaches a decision so
arbitrary and unreasonable as to amount to a clear and prejudicial error of law.” Id. 
When a trial court imposes discovery sanctions that are so severe as to preclude a
decision on the merits of a party’s claims, a party’s remedy by appeal is inadequate,
unless the sanctions are imposed simultaneously with the rendition of a final,
appealable judgment. TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913,
920 (Tex. 1991). Thus, if a sanctions order is not immediately appealable, a party
may seek relief from the order by mandamus. Id. 
          Here, the trial court’s order precludes a decision on the merits of Carnival’s
defenses because it enters judgment in favor of Allison on all liability issues. The
order is not final and appealable because the trial court ordered that damages would
be assessed at a later hearing. See id. at 919–20. Hence, if the trial court abused its
discretion in issuing the order, mandamus relief is appropriate. See id.
ANALYSIS
          Carnival contends the trial court abused its discretion in striking its pleadings
and entering judgment in favor of Allison on all liability issues. Specifically,
Carnival contends the trial court erred in (1) concluding that Carnival must produce
foreign-national, independent-contractor, codefendants for deposition without service
of process pursuant to the Hague Convention or Letters Rogatory; (2) ordering death
penalty sanctions without supporting evidence of a “pattern of evading discovery,
giving false responses to discovery, and refusing to engage in discovery in good
faith”; and (3) failing to consider lesser sanctions.
          A trial court may sanction a party for failure to comply with discovery requests
or orders. Tex. R. Civ. P. 215.3. Such sanctions include an order striking the
pleadings, dismissing the action with or without prejudice, or rendering a default
judgment. Tex. R. Civ. P. 215.2(b)(5). However, a trial court may not impose
sanctions that are more severe than necessary to satisfy legitimate purposes. Cire v. 
Cummings, 134 S.W.3d 835, 839 (Tex. 2004). Any sanction imposed must be “just.” 
Tex. R. Civ. P. 215.2(b). In evaluating whether sanctions are “just,” we consider (1)
whether a direct relationship exists between the offensive conduct and the sanction
imposed, and (2) whether the sanctions ordered are excessive to punish the improper
conduct. TransAmerican, 811 S.W.2d at 917. The trial court must provide written
findings to support its sanctions order. Cire, 134 S.W.3d at 840.
A.      Direct Relationship
          Under the first prong of the TransAmerican analysis, a direct relationship exists
if a trial court directs the sanction against the abuse found and it remedies the
prejudice caused to the innocent party. TransAmerican, 811 S.W.2d at 917. Here,
the trial court found that Carnival failed to make certain medical personnel, namely
Uche and Petrescu, available for deposition and that Carnival furnished incorrect
addresses in response to Allison’s discovery requests.
          1.       Failure to Make Uche and Petrescu Available for Deposition
          Texas Rule of Civil Procedure 199.3 allows a party to compel a witness to
attend an oral deposition by serving the witness with a subpeona. Tex. R. Civ. P.
199.3. Further, if the witness is retained by, employed by or otherwise subject to the
control of a party, service of the notice of deposition upon the party’s attorney is
tantamount to serving the witness directly. Id. Allison contends Carnival employed
Uche and Petrescu, and thus Carnival had a duty to make them available for
deposition. Allison further contends the notice of deposition sent to Carnival’s
counsel was sufficient to invoke that duty. Carnival responds that Uche and Petrescu
were independent contractors and not under Carnival’s control, nor represented by
Carnival’s counsel; thus, Carnival owed no duty to produce them for deposition, and
service via its counsel is improper. 
          As a preliminary matter, we note that the injury Allison complains of occurred
in international waters. Admiralty law applies when a personal injury occurs on a
cruise ship and a dispute arises between the injured passenger and the cruise ship
company.


 See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 588–90, 111 S.Ct.
1522, 1525 (1991); see also Keefe v. Bahama Cruise Line, 867 F.2d 1318, 1320–21
(11th Cir. 1989) (explaining that substantive law applicable to tort committed aboard
ship sailing in navigable waters is general maritime law, which is developed by
federal courts); Seven Seas Fish Market, Inc. v. Koch Gathering Sys., Inc., 36 S.W.3d
683, 686–87 (Tex. App.—Corpus Christi 2001, pet. denied) (laying out locality and
maritime nexus tests). The parties do not dispute that admiralty law governs this
case.
 
          The Fifth Circuit has held that medical personnel aboard ships are independent
contractors. Barbetta v. S.S. Bermuda Star, 848 F.2d 1364, 1369–70 (5th Cir. 1988)
(explaining that “[a]n impressive number of courts from many jurisdictions have, for
almost one hundred years, followed this same basic rule”).


 Here, Carnival’s ticket
information states that its “[d]octors are independent contractors.” Carnival’s
employment contract with Uche states that Uche is an independent contractor. In
addition, Carnival raised the independent contractor status of Uche and Petrescu in
its responses to discovery, its correspondence with Allison, and in its motions. 
Applying Barbetta, Uche and Petrescu are independent contractors by virtue of their
status as medical personnel aboard the Celebration. Medical personnel, as
independent contractors, are not subject to the control of the ship company. Id. 
Hence, Carnival did not have a duty to compel their attendance at a deposition on the
basis that Carnival was their employer, and notice of deposition on Carnival’s counsel
could not be imputed to either Uche or Petrescu. See Tex. R. Civ. P. 199.3. 
Moreover, Allison added Uche and Petrescu as codefendants individually, entitling
them to independent service of process. See Tex. R. Civ. P. 199.2–.3.
          In her motion for rehearing, Allison contends that, in applying Rule 199.3, even
if Uche and Petrescu were independent contractors and not “employed by” Carnival,
Uche and Petrescu were nonetheless “subject to the control of” Carnival such that
notice of deposition on Carnival’s counsel could be imputed to Uche and Petrescu,
and thus Carnival had a duty to produce Uche and Petrescu for deposition. See Tex.
R. Civ. P. 199.3 (providing that “[i]f the witness is a party or is retained by, employed
by, or otherwise subject to the control of a party, . . . service of the notice of oral
deposition upon the party’s attorney has the same effect as a subpoena served on the
witness”). Specifically, Allison contends that Carnival’s control is demonstrated by
the evidence that Uche and Petrescu were contractually bound to work and live on
Carnival’s ships six days per week and could not leave without permission from
Carnival. Allison did not cite authority for the proposition that these facts show de
facto legal control to a degree required to impute notice served on counsel to a
witness under Rule 199.3, and the trial court did not make such a finding in its order.
          Even if we were to conclude, however, that Uche and Petrescu could be subject
to Carnival’s control for purposes of Rule 199.3, we cannot conclude that any
relationship exists between a violation of that rule and the sanctions imposed. See
TransAmerican, 811 S.W.2d at 917. Rather, the events in the trial court leading up
to the sanctions are inconsistent with the death penalty sanction ultimately imposed. 
We note that the trial court never issued an order compelling Carnival to produce
Uche and Petrescu for depositions. In addition, the trial court denied Allison’s
motion for substituted service of suit on Uche through Carnival. Further, the trial
court granted Allison’s motion for substituted service of Uche and Petrescu pursuant
to the Hague Convention. Allison simply never attempted such service. Thus, the
record does not support the imposition of death penalty sanctions for any violation
of Rule 199.3.
          2.       False Responses 
          Allison contends Carnival also abused the discovery process by
misrepresenting the identification and location of Uche and Petrescu. The Texas
Rules of Civil Procedure require a party to answer written discovery with “a complete
response, based on all information reasonably available to the responding party or its
attorney at the time the response is made.” Tex. R. Civ. P. 193.1. If a party later
learns that the response was incorrect or incomplete when made or is no longer
correct and complete, the party has a duty to amend or supplement the response. Tex.
R. Civ. P. 193.5. 
          Here, in response to Allison’s requests for disclosure of any person with
relevant information, Carnival provided the name, address, and phone number of
Uche. Allison contends Carnival gave a false address. Six months later, Allison
attempted to serve Uche at the address provided. Although Uche was not found at
that address, the process server’s notes indicate that a person at the address confirmed
that she knew Uche. At the hearing on the motion for sanctions, Uche’s counsel
explained that Uche’s girlfriend was living at the address and that Uche was
frequently gone, but that the address given was the correct address. 
          Five months after its initial response, Carnival supplemented its answers with
the name and address of Petrescu. The record does not show that Allison attempted
to serve Petrescu at the address given and provides no other support for Allison’s
contention that the address was purposefully false when provided to her. 
          We conclude that neither of the trial court’s findings provides a basis for the
sanction imposed. The order precludes Carnival’s ability to present the merits of its
case. Discovery sanctions may not “adjudicate the merits of a party’s claims or
defenses unless a party’s hindrance of the discovery process justifies a presumption
that the party’s claims or defenses lack merit” or “absent a party’s flagrant bad faith
or counsel’s callous disregard for the responsibilities of discovery under the rules.” 
TransAmerican, 811 S.W.2d at 918; Daniel v. Kelley Oil Corp., 981 S.W.2d 230,
234–35 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). We conclude that the
record here does not warrant such a presumption. See TransAmerican, 811 S.W.2d
at 917–18. Moreover, Allison did not offer evidence at the hearing that her case has
been prejudiced by relying upon “false” addresses. See id. at 917 (explaining that
sanctions must be directed at remedying prejudice suffered). To the contrary, at the
time of the hearing on the motion for sanctions, the record shows that Allison had
served Uche and had a default judgment in place; Petrescu remained a defendant. 
           B.      Excessive Sanctions
          Under the second prong of the TransAmerican analysis, sanctions must not be
excessive and the trial court must have considered whether lesser sanctions were
available that would have fully promoted compliance. Id. Generally, before a
sanction that prevents a decision on the merits is justified, lesser sanctions must first 
be tested to determine their efficacy. Cire, 134 S.W.3d at 840 (citing Chrysler Corp.
v. Blackmon, 841 S.W.2d 844, 849 (Tex. 1992)). In all but the most exceptional
cases, the trial court must actually test the lesser sanctions before striking pleadings. 
Id. at 842 (applying GTE Commc’ns Sys. Corp. v. Tanner, 856 S.W.2d 725, 729 (Tex.
1993)). In all cases, the record must reflect that the trial court considered the
availability of appropriate lesser sanctions and must contain an explanation of the
appropriateness of the sanctions imposed. Id.; Spohn Hosp. v. Mayer, 104 S.W.3d
878, 883 (Tex. 2003).
           Here, the trial court never considered or imposed lesser sanctions prior to
striking Carnival’s pleadings. Although the trial court indicated at the hearing and
in its order that Carnival’s conduct had been an ongoing issue and that the trial court
had given Carnival prior opportunities to provide proper discovery responses, there
are no prior orders in the record; nor is there any discussion indicating the
consideration of lesser sanctions or an explanation of the appropriateness of the
sanctions imposed in the absence of prior orders. To the contrary, the record shows
that, in its January 16, 2004 order, the trial court denied Allison’s motion to serve the
independent-contractor defendants through Carnival. The trial court granted
Allison’s motion to serve Uche and Petrescu via the Hague Convention and Letters
Rogatory, but the record contains no evidence that Allison attempted to serve either
defendant pursuant to the trial court’s order granting substituted service.
           In particularly egregious cases, a trial court may order death penalty sanctions
without first testing lesser sanctions, but no evidence demonstrates that this is such
a case. See Cire, 134 S.W.3d at 838, 840–41 (demonstrating exceptional case in
which death penalty sanctions were upheld after single lesser sanction directed only
at counsel when party disregarded four discovery orders to produce certain evidence
and then deliberately destroyed evidence). 
 
 
 
 
 
 
 
 
CONCLUSION
           We hold that the trial court abused its discretion in imposing death penalty
sanctions against Carnival. We therefore conditionally grant Carnival’s petition for
writ of mandamus and direct the trial court to vacate its November 21, 2005 order
striking Carnival’s pleadings and entering a default judgment against Carnival. We
lift our stay of proceedings ordered January 9, 2006. We are confident that the trial
court will promptly comply, and our writ will issue only if it does not.


                                                                  Jane Bland
                                                             Justice

Panel consists of Justices Taft, Higley, and Bland.