# NO. 12-09-00091-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LAVERNA SELLS,*<br>*APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #2* |
| *EARL DROTT,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

LaVerna Sells appeals from a default judgment entered in favor of Earl Drott in his suit for specific performance of a contract. Sells raises three issues contending that the trial court erred in striking her pleadings, quashing the notice of deposition of her physician, and refusing to consider the physician's affidavit. We reverse and remand.

## BACKGROUND

Sells, who was born in 1924, lives in Houston, Texas. Sells and George W. Lampkin, Jr. owned some land in Smith County. They each executed a power of attorney regarding their land, giving LaCheryl Stebbings authority to

> execute, acknowledge, and deliver contract(s) and/or verbal response for listing with a real estate representative or expressed interested individual buyer relative to my land owned within the William Luce and Ventura Tejada Tracts, and any interest therein. If applicable, LaCheryl R. Stebbings/AGENT is authorized to present necessary documents on my behalf, such as deed, lien notices, or other indebtedness or obligations subject and pertaining to property associated with and conducive to listing the subject land.

### 2006 Litigation

In 2003, Drott and Stebbings executed a contract for the sale of the land, but Sells and Lampkin refused to accept payment of the purchase price. Drott filed suit against Sells and Lampkin for specific performance in 2006. Sells filed a pro se answer and an amended answer that included an affirmative defense. Sells also filed separate responses to Drott's request for admissions, request for disclosure, request for answers to

interrogatories, and request for production. Her responses were made up primarily of objections.

Drott secured a default judgment against Lampkin, who failed to answer, and Drott's claims against Lampkin were severed. Lampkin did not appeal. Neither Sells nor Lampkin appeared at the hearing on Drott's motion to sever. Sells's daughter, who is not an attorney, appeared in court as Sells's "representative." The trial court apparently determined that Sells's responses were signed by Sells's daughter. Consequently, the trial court struck Sells's pleadings and entered a default judgment against her on October 19, 2006. The trial judge also made it clear that he was going to forward a copy of the transcript of the hearing to the district attorney for "potential prosecution." Sells obtained counsel, J.B. Peacock, Jr., and appealed the default judgment to this court. We affirmed the judgment on July 18, 2007. *See Sells v. Drott*, 259 S.W.3d 194 (Tex. App.–Tyler 2007), *rev'd*, 259 S.W.3d 156 (Tex. 2008). She then appealed to the supreme court, which reversed after concluding that the trial court did not give her notice and an opportunity to present evidence before striking her answers and granting the default judgment.

## 2008 Motion for Next Friend

Before the supreme court's mandate issued on August 22, 2008, Drott's counsel, Howard Britain, demanded compliance with Drott's prior discovery requests. During a July 31, 2008 teleconference, Peacock had said he would amend or supplement the previous pro se responses as necessary when the mandate issued. However, Britain filed a motion to compel and for sanctions on the same day as the teleconference. On September 4, 2008, Sells filed a motion for appointment of her son, Lynn Sells, as her "next friend." In the motion, she explained that she is eighty-four years old and has had four strokes since 2001. She stated that she has slurred speech, short term memory loss, and cannot "get around" very easily. She asserted that she is "physically incapable of managing her own interests and the demands of this litigation." The motion is supported by a verification signed by Sells on August 26, 2008, stating that the information in the motion is true. It is also supported by the affidavit of Lynn Sells in which he speaks of his mother's physical condition. He states in his affidavit that "[m]entally [Sells] is fairly competent" but suffers from short term memory loss. He explains that, "[b]ecause of these disabilities," his mother asked him to appear for her in this litigation. He states that she is physically incapable of managing her own interests and the demands of the

2

litigation. The accompanying certificate of conference states that Sells's attorney made three attempts to discuss the motion with Drott's attorney, on August 26, September 2, and September 3, but opposing counsel did not respond. On September 12, Sells's attorney set the motion for hearing on October 9.

## Drott's Discovery Efforts

On September 24, Britain sent a letter to Sells's counsel requesting supplemental answers to his discovery requests by October 1 and warning that if they were not received, he would set the hearing on his motion to compel and for sanctions for October 9. Along with the letter, he served a subpoena for Sells to be present at the October 9 hearing, in order for him "to inquire why it is necessary for her to have a 'next friend' and to explain her failure to respond to [Drott's] discovery requests." Along with the letter and subpoena, he served notice of his intent to take Sells's deposition on October 10, explaining that it was "imperative" that he "immediately depose her so that we do not have age-related issues concerning her memory." He went on to explain in the letter that "the past track record, in terms of the delays to date in getting things done, combined with Ms. Sells['s] alleged physical and/or mental status, gives [him] a sense of urgency that [he] might not otherwise have in a case." Britain did not first consult with Sells's counsel before setting the date for the deposition. Peacock's co-counsel, Cynthia Shanklin, later explained to the trial court that this letter was the first indication that Drott would contest appointment of a next friend. At that time, she began trying to find out what dates Dr. Chiu, Sells's physician, would be available for a deposition.

## Sells's Response

On September 26, Sells provided supplemental responses to Drott's request for disclosure and request for production.

On September 29, Shanklin sent a letter to Britain cancelling the October 9 next friend hearing because she wanted to get Sells's medical records and Dr. Chiu's deposition before the hearing. She explained that Dr. Chiu would be out of town until October 6. Sells served discovery requests on Drott on September 30. However, the attorneys agreed that those answers would not be provided until after Sells had completed the discovery Drott had requested. On October 1, Shanklin filed a motion to quash the October 10 deposition of Sells. The motion was signed on September 29 and explains that there was concern for Sells's health and that she was not physically able to travel or testify. Shanklin said she was in the process of getting the doctor's deposition and the

3

medical records to determine whether Sells's medical condition was such that the stress of testifying would pose a potential health risk.

On October 9, Shanklin filed a motion for continuance, asking the court to postpone the hearing scheduled for that day on Drott's motion to compel, her motion for appointment of a next friend, and her motion to quash Sells's deposition until she could obtain a physician's testimony regarding Sells's mental capacity and physical capabilities. Attached to this motion was a short letter from a nurse at Methodist Neurological Institute in Houston, dated October 2, 2008, stating that Sells had been a patient there since 2001, has been seen by Dr. David Chiu, and that the nurse and Chiu "feel that she is not mentally capable of tolerating court proceedings or depositions."

**First Post-Remand Hearing**

Sells was not present at the October 9 hearing. The trial court denied the motion for continuance, apparently because a local rule requiring a certificate of conference was not complied with. Shanklin explained that the interrogatories had been answered, but not signed because it had not yet been determined whether Sells was competent to sign them. Britain said he did not know until that day that Sells was unable to sign interrogatories. Britain argued that Drott had been asking for discovery for two years and that all they got was a "roadblock" every time they tried to move forward. Shanklin argued that they wanted Sells's treating physician to determine if Sells could give a deposition before presenting her for a deposition. The court gave Sells until October 23 to answer the interrogatories and refused to quash the October 10 deposition.

**Scheduling Difficulties**

On October 9, the court set the next friend hearing for October 28. Also on that day, Shanklin sent a letter to Britain confirming a telephone conversation of that day in which she informed him that Sells would not appear for the scheduled October 10 deposition due to concerns for her health. On October 10, Shanklin filed a motion for rehearing asking the court to reconsider the motions ruled on at the October 9 hearing. She wanted more time to get the doctor's deposition because Sells's mental capacity was at issue and there might be serious health risks. On that same day, Shanklin sent Britain a letter stating that Dr. Chiu would be available for his deposition on October 17, 22, and 23. Also on October 10, Britain filed Drott's motion to compel Sells's deposition because she did not appear. He set the motion for hearing on October 14. On October 13, Shanklin made a written request for Sells's medical records.

4

Also on October 13, Britain responded to Shanklin's October 10 letter, stating he would be out of town from October 15 through October 24. He attached a copy of the January 22, 2008 letter by which he had notified the court and numerous attorneys that he would be unavailable on certain dates in 2008. Britain was not hired by Drott until July 2008. Therefore, he did not include Shanklin or Peacock on the original list of attorneys to whom he sent the notice in January.

## Second Post-Remand Hearing

On October 14, a hearing was held on Drott's motion to compel Sells's deposition and for sanctions. Shanklin explained that she was still trying to schedule Dr. Chiu's deposition and had requested medical records. Lynn Sells testified that Sells has had four strokes and a fractured back. She has short term memory loss and needs family members to make her decisions. He feared that testifying would create serious anxiety for her and possibly cause her to have another stroke. He described her as "fairly competent," and said she keeps her own bank account, with some monitoring. She had been taken from her home in Houston to Dallas to visit family once in the past two years. Lynn also testified that, since her last stroke, in 2006, she has traveled maybe two or three times a year. The court sustained Britain's objection to Lynn Sells's affidavit, which covered much of the same information as his testimony, commenting that Lynn Sells is not qualified to evaluate Sells. Noting that the record did not show Sells's physical or mental condition, the court granted Drott's motion to compel and for sanctions. The court ordered Sells to pay $2,500.00 by October 29 and set her deposition for October 30.

## Medical Evidence

On October 17, Shanklin sent a letter to Britain notifying him that Dr. Chiu was available to be deposed on October 28 and 31 and November 7, 14, 18, and 21. On October 23, Peacock filed a motion for continuance of the next friend hearing that was set for October 28 because he was still unable to get Dr. Chiu's deposition or the medical records. On October 28, Peacock filed a motion to reconsider Drott's motion to compel the deposition of Sells and for sanctions. In support of the motion, he attached the affidavit of Dr. Chiu, which was signed on October 22. The affidavit and a copy of Sells's medical records were received in Peacock's office on October 27. In the affidavit, Dr. Chiu states as follows:

5

> Laverna Sells has been a patient of mine since January of 2001. Ms. Sells has a long history of hypertension, diabetes and has suffered from multiple strokes, the first of which occurred in January 2001. Ms. Sells suffered from her last stroke February 2006. As a result of the strokes, Ms. Sells suffers from vascular cognitive impairment and has gait difficulty.
>
> In my opinion, based upon my training as a medical doctor board certified in neurology, Ms. Sells is not mentally nor physically capable of enduring the stress of testifying at a deposition or trial, or appearing for a trial.

The medical records indicate that Dr. Chiu recommended a neuropsychological evaluation on October 13. The trial court denied the motion to reconsider on October 29.

On October 30, Sells paid the $2,500.00 sanction, but did not appear for the deposition. Drott immediately filed his second motion to compel her deposition and his second motion to compel answers to interrogatories. On November 3, Drott received Sells's supplemental responses to his request for interrogatories that were due on October 23. On November 4, Peacock noticed his intention to take the oral deposition of Dr. Chiu on November 21 in Houston. In the notice, he explained that, on October 17, he had provided Britain with the dates Dr. Chiu was available, but Britain never responded or agreed to any date for Dr. Chiu's deposition.

**Third Post-Remand Hearing**

A hearing was held November 5 to address Sells's motions for reconsideration and for rehearing. That morning, Sells moved for continuance of the hearing, but the court denied her motion because it was not timely. Peacock offered both the Chiu affidavit and Sells's medical records. The court admitted the medical records but found the affidavit to be hearsay. The court commented that it looked as though Sells was taking every chance to delay. Peacock explained that he was not aware there was a problem until Drott subpoenaed Sells for a deposition. At that point, the family said she would not be able to stand up under a deposition. Additionally, he received the October 2 letter from the nurse that put them on notice that there was a problem. The trial judge said the way to find out if Sells could handle the deposition was to depose her. The judge commented further that he did not like the way Sells's attorneys had handled the situation.

Also at the November 5 hearing, Drott's motion to compel answers to interrogatories was heard and granted, as was his motion to compel Sells's deposition. The court ordered Sells to answer the interrogatories by November 15 and to pay $2,000.00 in sanctions. Additionally, the court ordered Sells to appear for her deposition

on November 11 and to pay $1,562.50 in sanctions. After the court made an oral ruling, the following exchange occurred:

> Peacock: Right. If she's incompetent that might be evident from the deposition and what the Court is ruling makes sense. The problem I've got though is her doctor is saying and these records bear it out that she could have another stroke if I present her in front of Mr. Britain and a court reporter for her deposition. That's the risk. That's the problem.

> The Court: I well-understood. And I consider it's not generally a good thing to kill the party to the lawsuit in the process of the lawsuit. But the logical result [sic] to find out the condition of the lady is a face-to-face, one-on-one, to try to do the deposition, which is a whole lot [sic] stressful than appearing in the courtroom.

> Peacock: If I may, Your Honor, doesn't it make more sense to take her doctor's deposition and let him tell us, give his opinion about whether she could present? That's all I'm asking.

> The Court: I think the quickest and fastest way is to try to take the lady's deposition. Let's cross this bridge once and for all, and this is the third time.

> Peacock: But I'm so afraid, Your Honor, if we do that – if she has another stroke, she could die on the spot and she's had four strokes already.

> The Court: I understand that. That's why I spent all the time looking at the records. It's a calculated move, and that's pretty much what everything always is.

**Drott's Motion to Quash**

Two days later, Drott moved to quash Sells's notice of intention to take Dr. Chiu's November 21 deposition. He reasoned that since Sells had been ordered to appear for her deposition on November 11, the later scheduled doctor's deposition is "untimely, irrelevant, unnecessary, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence." However, Sells did not appear for her deposition on November 11 and, on November 12, Drott filed his third motion to compel her deposition and for sanctions.

**Further Pleadings and Motions**

On November 13, Sells filed her second amended answer and a counterclaim for trespass to try title. She asked for an injunction against Drott, prohibiting him from obstructing access to her property because he allegedly built a fence landlocking her property. She also filed a motion to reconsider the court's most recent adverse rulings. These motions were set for hearing on November 19. On that date, Drott filed his third motion to compel answers to interrogatories and for sanctions because he did not receive

7

answers that were due November 15. Because Sells did not get sufficient notice of that motion, the court postponed the hearing until December 1. The court commented that "[i]t does look like I'm being hit with stalling on trying to get that lady." On November 24, Sells signed and served her amended response to Drott's request for answers to interrogatories.

## Fourth Post-Remand Hearing

At the December 1 hearing, Britain conceded that Sells's amended responses were responsive. Yet he argued that death penalty sanctions were appropriate because Sells failed to obey five court orders and filed a counterclaim after claiming to be incompetent. Peacock argued that the counterclaim was not evidence of capacity and, if he did not plead it, he would be guilty of malpractice. The court announced that "[t]his is going to get resolved today" and "I intend to end this issue today one way or the other."

At the December 1 hearing, the court denied Sells's motions for rehearing and for reconsideration. The court granted Drott's third motion to compel answers to interrogatories and ordered Sells to pay $1,500.00 in sanctions. The court also granted Drott's third motion to compel Sells's deposition and ordered her to pay $1,500.00 in sanctions. The trial court granted Drott's motion to strike Sells's pleadings and struck her answers and her cross action. The trial court also granted Drott's motion to quash Dr. Chiu's deposition as moot. Drott testified that he sued Sells for specific performance of a contract to purchase Sells's land at $600.00 an acre. He had previously tendered $9,683.40 to the court's registry. He testified that after he filed his lis pendens in this case, Sells tried to convey the property to her children.

## The Default Judgment

The written order, signed on December 18, 2008, includes several statements and findings. The court found that Sells had engaged in a pattern of discovery abuse and that the credible evidence indicates that she is both mentally and physically capable of appearing for depositions, responding to discovery requests, and complying with discovery orders but refused to do so. The court stated that it had considered all possible alternatives to rendering a death penalty sanction and noted that it had tried lesser sanctions. The court found that Sells's actions indicated a blatant disregard for the court's authority and that no lesser sanction than the death penalty sanction would promote compliance with the rules. The court explained that it had considered both the role of Sells and of defense counsel in the discovery abuse. The court noted that Sells's

8

refusal to appear for her deposition, answer discovery, and pay sanctions were acts of personal misconduct on the part of Sells for which sanctions should be visited solely on her and for which the court declined to extend responsibility to defense counsel. The court found that filing a counterclaim seeking affirmative relief was inconsistent with Sells's alleged inability to respond to discovery requests or appear for her deposition. The court found that Sells's pattern of discovery abuse and delay justified a presumption that her claims and defenses lack merit and that Drott would be unable to adequately prepare for trial without the material evidence provided by Sells's deposition testimony and discovery responses. Thus, the court determined that Drott had been irreparably harmed by Sells's discovery abuse and the death penalty sanction was directed against that abuse.

The court entered a default judgment against Sells, and all matters set forth in Drott's first amended petition were deemed established as a matter of law. The court ordered that Drott was entitled to ownership of the four tracts of land at issue and that the judgment would serve as a conveyance of Sells's interest in the property. The court also ordered Sells to pay Drott's previously incurred attorney's fees in the amount of $11,615.00, his future attorney's fees in the intermediate appellate court in the amount of $15,000.00, and his future attorney's fees in the supreme court in the amount of $10,000.00. These last two awards were not conditioned on Drott's prevailing on appeal. The court also ordered Sells to pay the delinquent sanctions in the amounts of $2,000.00, $1,562.50, $1,500.00, and $1,500.00 within thirty days of the date of judgment.

## DEATH PENALTY SANCTIONS

In her first issue, Sells contends the trial court's rulings were unreasonable and arbitrary, and thus the court erred in striking her pleadings and entering a final judgment in Drott's favor. She argues that she did not willfully absent herself to avoid her deposition, did not willfully avoid written discovery, and did not act in bad faith. She contends she is infirm and unable to comply with the deposition settings. Further, she argues that since she never had a contract to sell her land to Drott, she has a meritorious defense. She asserts that Drott ignored the fact that her medical condition was at issue and demanded discovery. She contends that her right to due process was violated

because she was not given an adequate opportunity to present evidence to establish that she was unable to testify at trial or a deposition. With regard to written discovery requests, Sells asserts that she fully complied with those requests, the sanctions were wrongfully assessed, and they should be set aside.

## Standard of Review

If a party fails to comply with proper discovery requests or to obey an order to provide discovery, or abuses the discovery process, the court may, after notice and hearing, impose appropriate sanctions. TEX. R. CIV. P. 215.2, 215.3. The choice of authorized sanctions is within the sound discretion of the trial court. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). However, any sanction imposed by the trial court must be just. TEX. R. CIV. P. 215.2(b); *Powell*, 811 S.W.2d at 917. There is a two prong standard for determining whether an imposition of sanctions is "just." First, a direct relationship must exist between the offensive conduct and the sanction imposed. *Powell*, 811 S.W.2d at 917. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. *Id*. Depending on whom the offensive conduct is attributable to, either the attorney or the client might be sanctioned. *Id*. Second, just sanctions must not be excessive. *Id*. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. *Id*. The court must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *Id*.

The imposition of very severe sanctions is limited by constitutional due process. *Id*. Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *Id*. at 918. Sanctions that are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *Id*. During appellate review of discovery sanctions, the entire record, including any evidence, arguments of counsel, the written discovery on file, and the circumstances surrounding the party's alleged discovery abuse, must be examined. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852-53 (Tex. 1992) (orig. proceeding).

## Competing Needs

Sells signed a verification on August 26, 2008, that she wanted her son, Lynn Sells, as her next friend. She filed her motion for the appointment of Lynn Sells as her "next friend," pursuant to rule of civil procedure 44, on September 4, 2008. She was eighty-four years old at the time and had previously suffered four strokes. She described her impairments and said she is physically incapable of managing her own interests and the demands of the litigation. The motion was accompanied by Lynn Sells's affidavit in which he described his mother's physical problems and said she was "mentally fairly competent." Peacock's certificate of conference stated that he attempted to contact Britain to discuss the merits of the motion on three separate occasions and Britain did not respond. Peacock set the motion for hearing on October 9.

On September 24, Britain notified Peacock that he would set his motion to compel and for sanctions regarding the written discovery for October 9 and issued a subpoena commanding Sells to appear and testify at the October 9 hearing. He also served Peacock with notice of his intention to take Sells's deposition on October 10 without first discussing an agreed date. Britain wanted to depose Sells immediately due to age-related memory concerns. He explained that he had a sense of urgency due to previous delays and Sells's "alleged physical and/or mental status."

Peacock cancelled the scheduled next friend hearing because he wanted to first obtain medical records and Dr. Chiu's deposition to use as evidence in support of his motion. Peacock filed a motion to quash the deposition and for a protective order, arguing that Sells was not physically able to travel or testify. He asked that her deposition be postponed until it could be determined if the deposition posed a health risk to Sells.

At the October 9 hearing, Shanklin explained that they had received a letter from a nurse who works for Dr. Chiu, dated October 2, 2008, that first alerted them to a problem with Sells's mental capacity. That letter was admitted for record purposes only. Britain argued that he was entitled to ascertain by questioning Sells whether or not she had a competency issue. On that same day, the court gave notice that the next friend hearing had been reset to October 28. On October 10, Peacock sent a letter to Britain informing him that Dr. Chiu would be available for his deposition on three different dates in October. Britain informed Peacock that he would be out of town on those dates. Peacock later learned that Dr. Chiu was available on six additional days in October and November, but Britain never agreed to any date for Dr. Chiu's deposition. At the

11

October 14 hearing, Lynn Sells testified, describing his mother's condition. He said she was fairly competent but forgetful and needed her family to make her decisions. He did not believe that she was able to go to court. He said testifying would create "serious anxiety" for her, and he was afraid she would have a stroke.

Texas Rule of Civil Procedure 44 allows for "persons non compos mentis who have no legal guardian" to sue and be represented by a "next friend." TEX. R. CIV. P. 44. Rule 44 gives a next friend the same rights "concerning such suits" as a guardian has, which necessarily include the ability to make any decision with respect to a lawsuit on behalf of the incompetent person. *See id*.; TEX. PROB. CODE ANN. §§ 768, 774(a)(4) (Vernon Supp. 2010). Rule 44 provides further that a next friend may, with court approval, compromise suits and agree to judgments. TEX. R. CIV. P. 44.

It is questionable whether a motion for next friend was the appropriate procedural vehicle for raising the issue of Sells's ability to withstand the deposition or trial. S*ee* ***Saldarriaga v. Saldarriaga***, 121 S.W.3d 493, 499 (Tex. App.–Austin 2003, no pet.). Peacock was correct, however, in attempting to address the issue. *See* Tex. Disciplinary R. Prof'l Conduct 1.02(g), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9) ("A lawyer shall take reasonable action to secure the appointment of a guardian or other legal representative for, or seek other protective orders with respect to, a client whenever the lawyer reasonably believes that the client lacks legal competence and that such action should be taken to protect the client."). But Peacock did not have the supporting medical information when he filed the motion and did not obtain the doctor's affidavit until about two months later. Further, Peacock's attempts to obtain the doctor's testimony were unsuccessful.

Britain subpoenaed Sells to appear at the October 9 hearing so that he could question her about her need for a next friend. He also scheduled her deposition for the next day. Sells did not attend the October 9 hearing. In argument to the trial court, Britain stated that Drott had been asking for discovery for two years and had gotten a "roadblock" every time he attempted to move forward. But the record reveals that the first phase of this lawsuit lasted slightly over two months in 2006. Then it was on appeal. The discovery process began again when the supreme court's mandate issued on August 22, 2008, which was about six and one-half weeks before the day Britain made that statement. The trial court denied Sells's motion to quash and ordered her to appear for the deposition without addressing the issue of her mental or physical ability to attend.

Britain immediately filed his motion to compel because she did not attend the deposition on October 10. The trial court granted that motion and ordered Sells to pay sanctions and to appear for her deposition on October 30.

When Sells did not appear, Drott immediately filed a motion to compel and for sanctions. Two days after Peacock noticed Dr. Chiu's November 21 deposition, the trial court granted Drott's motion to compel and ordered her to be deposed on November 11. Four days before the scheduled November 11 deposition of Sells, Drott moved to quash Dr. Chiu's deposition, effectively staying his deposition until the court could consider the motion. On November 12, Drott again moved to compel Sells's deposition because she did not attend on November 11. Drott insisted upon Sells's deposition even though he knew there was a question about her health.

## Undue Burden

By accepting Drott's position, the trial court failed to focus on the primary matter to be resolved. *See **Pelt v. Johnson***, 818 S.W.2d 212, 218 (Tex. App.–Waco 1991, orig. proceeding). When Sells filed her motion for appointment of next friend, Drott and the trial court were put on notice that there was a problem. When Sells filed her motion to quash the subpoena and for a protective order alleging health concerns, she was implicitly arguing that her appearance in court or for the deposition constituted an undue burden. The rules of civil procedure dictate that the court must provide protection from undue burden caused by issuance of a subpoena or by discovery methods. *See* TEX. R. CIV. P. 176.7, 192.4, 192.6(b). To protect a movant from undue burden, or the invasion of personal or constitutional rights, the court may make any order in the interest of justice. TEX. R. CIV. P. 192.6(b). Moreover, courts may limit discovery pending resolution of threshold issues like venue, jurisdiction, forum non conveniens, and official immunity. *See id.*; *see also **In re Alford Chevrolet-Geo***, 997 S.W.2d 173, 181 (Tex. 1999) (orig. proceeding) (observing that rule for level 3 discovery control plan contemplates that plan may "phase discovery to resolve discrete issues").

In this case, the prudent course of action would have been for the trial court to address the issues raised by Sells's motion for the appointment of a next friend. We are hard pressed to say that any sanction for her refusal to attend a deposition before addressing the health concerns can be justified. But we definitely cannot say that death penalty sanctions are justified.

### *TransAmerican* Factors

13

A just sanction must be directed against the abuse and toward remedying the prejudice caused to Drott. *See Powell*, 811 S.W.2d at 917. Here, the "abuse" was Sells's refusal to appear for a deposition. The rationale for her refusal was the determination that her health and the possibility of having another stroke should take precedence over Drott's need for her testimony until after proper medical evidence could be presented. We acknowledge the possibility of prejudice from the dimming of Sells's memory. *See Pelt*, 818 S.W.2d at 217. But the quality of her memory is necessarily subsumed by her overall physical and mental health. Drott argues that Lynn Sells's testimony indicates that Sells was able to attend her deposition. We disagree. The fact that she could take a pleasure trip to visit family does not mean she could withstand the stress of traveling to be deposed or to testify in court. Additionally, there was the concern of the stress caused by giving testimony, either by deposition or in court.

The death penalty sanction insured that Sells would not miss another deposition, or have to risk a stroke, and more than compensated Drott for prejudice he endured by not having a pretrial deposition of his defendant. The trial court imposed lesser sanctions before imposing the death penalty sanctions. It ordered Sells to pay fees of $2,500.00 and $1,562.50 for missing the first two deposition dates. It also ordered her to pay fees of $1,500.00 for missing the third deposition date. But since that sanction was ordered at the same time the trial court imposed the death penalty sanctions, we do not consider the $1,500.00 sanction to be prior use of a lesser sanction. The court also ordered her to pay $2,000.00 for failing to respond to interrogatories and an additional $1,500.00 for failing to respond, although that sanction was imposed after she had complied. That sanction also was imposed on the same day the death penalty sanction was imposed. Therefore, like the sanction for failing to appear at the last scheduled deposition, this sanction could not have been imposed in an attempt to first test the persuasiveness of lesser sanctions. Imposition of the least severe sanction adequate to remedy the discovery abuse would ordinarily result in an appropriate sanction and should advance the goal of the elimination of "hard ball" discovery practices where the death penalty, rather than true discovery in preparation for trial on the merits, is the goal. *Id*. at 216 n.1.

Finally, we cannot say that Sells's refusal to attend the deposition based on health concerns justifies a presumption that her claims or defenses lack merit. *See Powell*, 811 S.W.2d at 918. Peacock made several attempts to secure the doctor's deposition, an act made more difficult because he also had to address Drott's attempts to obtain Sells's

14

deposition and written interrogatories. Although medical evidence should have been produced in early September, Dr. Chiu was available to be deposed in mid October, two months before the death penalty sanction was imposed on December 18. Britain was scheduled to be out of town on that date, but Peacock notified him that Dr. Chiu was also available on October 28 and 31 and November 7, 14, 18 and 21. However, Peacock received no response. The court did have before it Dr. Chiu's affidavit, which was based on his personal knowledge, in which he specifically stated that Sells "is not mentally nor physically capable of enduring the stress of testifying at a deposition or trial, or appearing for a trial." Peacock consistently argued that Sells should not attempt to appear at a deposition or at trial until after her mental and physical limitations had been ascertained. This is not an indication of bad faith on the part of Sells or callous disregard for the responsibilities of discovery by Peacock. *See id*. Further, during the time period when she refused to attend depositions, she completed the written discovery. Sells paid the $2,500.00 sanction for missing the first scheduled deposition and had complied with all requests for written discovery as of November 24.

Death penalty sanctions violate due process absent a party's flagrant bad faith or counsel's callous disregard for the discovery process. *Id*. We conclude that the sanction imposed on Sells, the loss of her right to defend against Drott's suit, did not relate to her failure to appear at her deposition. *See **F.N. Fausing Trading APS v. Estate of Barbouti***, 851 S.W.2d 314, 317 (Tex. App.–Houston [1st Dist.] 1992, writ denied). Striking Sells's pleadings and rendering a default judgment is more severe than necessary to satisfy the legitimate purposes of sanctions for discovery abuse. Given that the ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal rather than by what facts are concealed, all parties and the trial court should be concerned with learning the truth about Sells's health. *See **Garcia v. Peeples***, 734 S.W.2d 343, 347 (Tex. 1987) (orig. proceeding). Here, the goal of the discovery process was frustrated by the adversarial approach used. Attorneys must balance common sense and compassion with zealous advocacy. The trial court should have balanced the parties' competing needs and rendered an order tailored to the situation, allowing the parties to quickly get to the truth of the issue of Sells's health and ability to appear for a deposition rather than allowing Drott to focus on Sells's deposition.

The death penalty sanction was an excessive sanction for Sells's failure to appear for her scheduled depositions. Thus, the trial court abused its discretion in imposing the

15

death penalty sanction. *See Siegel v. Smith*, 836 S.W.2d 193, 195 (Tex. App.–San Antonio 1992, writ denied) (holding denial of protective order was abuse of discretion where party presented evidence that failure to attend deposition was due to illness). Similarly, the trial court abused its discretion in assessing the monetary sanctions. The rules allow for the possibility that opposition to discovery may be justified, stating that a court shall require a party failing to comply to pay reasonable expenses unless the court finds that the failure was substantially justified. TEX. R. CIV. P. 215.1(d), 215.2(b)(8). Here, Sells's failure to comply with the requests and orders was justified. Thus, the trial court abused its discretion when it ordered Sells, on three different occasions, to pay Drott's attorney's fees for missing the scheduled depositions and, on two different occasions, to pay Drott's attorney's fees for failing to complete interrogatories as ordered. We sustain Sells's first issue.

## DR. CHIU'S AFFIDAVIT

In her third issue, Sells asserts the trial court erred in failing to consider Dr. Chiu's affidavit. She argues that the affidavit was properly before the court in support of her various motions through which she attempted to show she should not be compelled to appear for a deposition without the court first determining if she was mentally and physically capable of doing so. We note that, at the October 9 hearing, the trial court suggested Sells obtain an affidavit from her doctor. Sells relies on rule of civil procedure 199.6 as authority, while Drott argues that rule 199.6 applies only to objections and assertions of privilege made during a deposition.

We review a trial court's evidentiary rulings for an abuse of discretion. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court abuses its discretion when it acts without regard to any guiding principles. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995). The title of rule 199 is "Depositions Upon Oral Examination." The title of rule 199.6 is "Hearing on Objections." Rule 199.6 refers to "an objection or privilege asserted by an instruction not to answer or suspension of the deposition" and provides that the party seeking to avoid discovery must present evidence by testimony or affidavit. TEX. R. CIV. P. 199.6.

Although rule 199.6 does not explicitly cover a situation such as this where a party objected to appearing for a deposition, we conclude that it implicitly applies here. Prior rule 166b(5) provided that a motion for a protective order made by any person from

whom discovery is sought may have exhibits attached, including affidavits. TEX. R. CIV. P. 166b(5) (1983, repealed 1999). Citing prior rule 166b(4), which allows affidavits in support of claims of exemptions and immunity, the supreme court has allowed affidavits in support of a motion for protective order seeking to limit use of discovered documents. *Garcia*, 734 S.W.2d at 345. A party who seeks to exclude matters from discovery on grounds that the requested information is unduly burdensome may submit an affidavit in support of its position. *See In re Amaya*, 34 S.W.3d 354, 357 (Tex. App.–Waco 2001, orig. proceeding). A party whose deposition has been noticed may assert a privilege, seek protection, and assert affidavits as evidence to support the privilege asserted. *In re Baptist Hosps. of Se. Tex.*, 172 S.W.3d 136, 141 (Tex. App.–Beaumont 2005, orig. proceeding). When a plaintiff seeks to depose an official at the highest level of corporate management, that official may move for a protective order to prohibit the deposition, supported by his affidavit. *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex. 1995) (orig. proceeding). We also note that the legislature and the supreme court have discouraged oral presentation of testimony for pretrial matters when it can be fairly submitted in writing. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (Tex. 2005).

Collectively, that body of authority supports a determination that rule 199.6 applies to allow an affidavit in support of Sells's attempt to avoid her deposition. Here, Dr. Chiu's affidavit was based on personal knowledge and identified enough facts to serve its purpose. It was sufficient for the court to conclude that, because Sells may have competency and health issues, discovery should be suspended while those issues were investigated. *See Garcia*, 734 S.W.2d at 345. Thus, the trial court erred in failing to consider Dr. Chiu's affidavit. We sustain Sells's third issue.

### DR. CHIU'S DEPOSITION

In her second issue, Sells contends the trial court erred in quashing the notice of deposition of Dr. Chiu. Drott argues that the deposition had been "arbitrarily noticed" at a time when his counsel had multiple prior set hearings. Yet, he does not explain why counsel did not respond when Peacock attempted to get an agreed date. The trial court never reached the merits of the motion to quash because it imposed death penalty sanctions against Sells. As explained above, the issue of Sells's capacity and ability to attend a deposition should have been addressed first. *See* TEX. PROB. CODE ANN.

17

§ 683(a) (Vernon Supp. 2010); Tᴇx. R. Cɪᴠ. P. 176.7, 192.6(b). A deposition of her treating physician would have been relevant. Nevertheless, because of our resolution of Appellant's first and third issues, we do not reach Sells's second issue. *See* Tᴇx. R. Aᴘᴘ. P. 47.1.

<u>**CONCLUSION**</u>

The trial court abused its discretion in assessing death penalty sanctions against Sells and refusing to consider Dr. Chiu's affidavit. Accordingly, we ***reverse*** the trial court's judgment and ***remand*** this cause to the trial court for proceedings consistent with this opinion.

**<u>BRIAN HOYLE</u>**
Justice

Opinion delivered December 2, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J*

(PUBLISH)