ACCEPTED
01-15-00117-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/7/2015 3:37:57 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00117-CV

IN THE FIRST COURT OF APPEALS, HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/7/2015 3:37:57 PM
CHRISTOPHER A. PRINE
Clerk

League City,
*Appellant and Cross-Appellee,*

v.

Texas Windstorm Insurance Association,
*Appellee and Cross-Appellant.*

On Appeal from the 10th District Court at Galveston, Texas
(No. 12-CV-0053)

## BRIEF OF CROSS-APPELLANT
## TEXAS WINDSTORM INSURANCE ASSOCIATION

Andrew T. McKinney IV
State Bar No. 13716800
LITCHFIELD CAVO LLP
One Riverway, Suite 1000
Houston, Texas 77056
Telephone:  (713) 418-2000
Facsimile:   (713) 418-2001

James R. Old, Jr.
State Bar No. 15242500
JAY OLD & ASSOCIATES, PLLC
2615 Calder Avenue, Suite 720
Beaumont, Texas 77702
Telephone:  (409) 241-7252
Facsimile:   (409) 419-1733

Dale Wainwright
State Bar No. 00000049
dale.wainwright@bgllp.com
Yvonne Y. Ho
State Bar No. 24055673
Lindsay E. Hagans
State Bar No. 24087651
BRACEWELL & GIULIANI LLP
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Telephone:  (512) 472-7800
Facsimile:    (800) 404-3970

ATTORNEYS FOR CROSS-APPELLANT TEXAS WINDSTORM INSURANCE ASSOCIATION

**ORAL ARGUMENT REQUESTED**

## STATEMENT REGARDING ORAL ARGUMENT

This was a long, complex pre-trial and trial that generated a large record. TWIA anticipates that oral argument will be necessary to clarify the many issues raised by both sides on appeal. In the event that this Court decides oral argument is necessary, TWIA respectfully requests that the Court include the issues raised herein in this cross-appeal and conditional appeal.

## IDENTITIES OF PARTIES AND COUNSEL

*Cross-Appellant (Defendant)*

Texas Windstorm Insurance Association

*Counsel for Cross-Appellant*

Dale Wainwright
State Bar No. 00000049
dale.wainwright@bgllp.com
Lindsay E. Hagans
State Bar No. 24087651
lindsay.hagans@bgllp.com
BRACEWELL & GIULIANI LLP
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Telephone: (512) 472-7800
Facsimile: (800) 404-3970

Yvonne Y. Ho
State Bar No. 24055673
yvonne.ho@bgllp.com
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (800) 404-3970

Andrew T. McKinney IV
State Bar No. 13716800
mckinney@litchfieldcavo.com
LITCHFIELD CAVO LLP
One Riverway, Suite 1000
Houston, Texas 77056
Telephone: (713) 418-2000
Facsimile: (713) 418-2001

James R. Old, Jr.
State Bar No. 15242500
jay.old@jroldlaw.com
JAY OLD & ASSOCIATES, PLLC
2615 Calder Avenue, Suite 720
Beaumont, Texas 77702
Telephone: (409) 241-7252
Facsimile: (409) 419-1733

*Trial Counsel for Cross-Appellant*

David P. Salyer
State Bar No. 17549680
dpsalyer@mapalaw.com
MAPA LAW, PC
802 Rosenberg
Galveston, Texas 77553
Telephone: (409) 763-2481
Facsimile: (409) 762-1155

**Cross-Appellee (Plaintiff)**

League City, Texas

**Counsel for Cross-Appellee**

Jennifer Bruch Hogan
HOGAN & HOGAN
711 Louisiana, Suite 500
Houston, TX 77002
Telephone: (713) 222-8800
Facsimile: (713) 222-8810

**Trial Counsel for Cross-Appellee**

J. Steve Mostyn
THE MOSTYN LAW FIRM
3810 W. Alabama Street
Houston, Texas 77027
Facsimile: (713) 861-8084

Gregory F. Cox
Michael R. Ramsey
THE MOSTYN LAW FIRM
6280 Delaware Street
Beaumont, Texas 77706
Facsimile: (409) 832-2703

Randal Cashiola
RANDAL CASHIOLA LAW OFFICE
2090 Broadway Street
Beaumont, TX 77701
Telephone: (409) 813-1443

# TABLE OF CONTENTS

*Page*

IDENTITIES OF PARTIES AND COUNSEL ........................................................ i

INDEX OF AUTHORITIES.......................................................................... vi

STATEMENT REGARDING RECORD REFERENCES.................................... ix

STATEMENT OF THE CASE........................................................................x

ISSUES PRESENTED................................................................................ xi

INTRODUCTION ......................................................................................1

STATEMENT OF FACTS ............................................................................1

    A.    League City sued TWIA for allegedly unresolved insurance claims, which became the subject of a problematic appraisal. ............1

    B.    League City continually stonewalled on the specific bases for its lawsuit, impairing TWIA's attempts to respond to discovery, yet at the same time League City asked the court to sanction TWIA for failing to provide discovery. ...............................................2

    C.    The pre-trial court sanctioned TWIA $15,000 to punish a minor delay, despite a total lack of prejudice or harm suffered by League City. ..............................................................................5

    D.    After the appraisal award was issued, TWIA amended its answer to assert defenses to the award..............................................7

    E.    League City's attempt to seek discovery on TWIA's appraisal defenses did not comply with discovery rules, and so a dispute ensued. ..............................................................................9

    F.    The pre-trial court summarily overruled TWIA's discovery objections and ordered TWIA to answer League City's Third Interrogatories the next day...............................................11

G. The pre-trial court struck TWIA's defenses to the appraisal award because TWIA declined to waive its objections in answering League City's Third Interrogatories. ................................12

H. TWIA prevailed at trial, and the trial court entered a take-nothing judgment for TWIA. .........................................................13

SUMMARY OF THE ARGUMENT ....................................................................15

ARGUMENT .........................................................................................................17

I. A Trial Court's Discovery Sanctions Order Is Reviewed For An Abuse Of Discretion. ..................................................................................17

II. The Pre-Trial Court Abused Its Discretion In Ordering A $15,000 Sanction When League City Failed To Show Any Harm That Resulted From TWIA's Actions. ......................................................................18

A. League City never attempted to show any prejudice suffered by TWIA's delay in serving supplemental responses, or quantify the alleged harm. ......................................................................18

B. Even if there was a basis for calculation in the record—which there is not—the $15,000 monetary sanction still would be excessive. ......................................................................................22

C. TWIA was not dilatory in lodging meritorious objections to the discovery. ..................................................................................23

III. The Pre-Trial Court Abused Its Discretion By Imposing Death-Penalty Sanctions On TWIA Without Meeting The Mandatory Requirements For Levying Such Sanctions. (*Conditional Cross-Point*) ..........................................................................................................25

A. Texas law cabins a trial court's discretion to order death-penalty sanctions by imposing strict limitations on their use. ...........26

B. The pre-trial court abused its discretion by sanctioning TWIA for a minimal noncompliance that was substantially justified. ..........28

1. The record belies the pre-trial court's finding that TWIA had waived its objections to the Third Interrogatories. ...........28

2.     TWIA was substantially justified in answering them subject to its proper objections. ...............................................30

C.     The requirements for death-penalty sanctions were not met. ............31

1.     League City suffered no prejudice from TWIA's continued assertion of objections while submitting amended and supplemental answers to the Third Interrogatories. ........................................................................32

2.     The pre-trial court's death-penalty sanction of striking TWIA's affirmative defenses is excessive in light of TWIA's conduct.................................................................34

D.     The sanction was harmful because ample evidence at trial supported TWIA's appraisal defenses that were wrongfully stricken. ..................................................................................35

PRAYER ...........................................................................................................40

CERTIFICATE OF SERVICE .........................................................................42

CERTIFICATE OF COMPLIANCE.................................................................42

APPENDIX .......................................................................................................43

# INDEX OF AUTHORITIES

*Page(s)*

**CASES**

*Am. Flood Research v. Jones*,
192 S.W.3d 581 (Tex. 2006) (per curiam) ......................................................29

*Bair v. Hagans*,
838 S.W.2d 677 (Tex. App.—Houston [1st Dist.] 1992, writ
denied).................................................................................................................34

*Barnes v. W. Alliance Ins. Co.*,
844 S.W.2d 264 (Tex. App.—Fort Worth 1992, writ dism'd)...........................37

*Braden v. Downey*,
811 S.W.2d 922 (Tex. 1991) ............................................................................19

*Braden v. S. Main Bank*,
837 S.W.2d 733 (Tex. App.—Houston [14th Dist.] 1992, writ
denied).................................................................................................................19

*Butan Valley, N.V. v. Smith*,
921 S.W.2d 822 (Tex. App.—Houston [14th Dist.] 1996, no writ)...................35

*Christus Health Gulf Coast v. Carswell*,
433 S.W.3d 585 (Tex. App.—Houston [1st Dist.] 2013, pet.
granted) ...............................................................................................................21

*Chrysler Corp. v. Blackmon*,
841 S.W.2d 844 (Tex. 1992) ..............................................................18, 32, 34

*Cire v. Cummings*,
134 S.W.3d 835 (Tex. 2004) ............................................................................17

*Continental Ins. Co. v. Guerson*,
93 S.W.2d 591 (Tex. Civ. App.—San Antonio 1936, writ dism'd).............36, 37

*Downer v. Aquamarine Operators, Inc.*,
701 S.W.2d 238 (Tex. 1985) ............................................................................17

*Ford Motor Co. v. Tyson*,
  943 S.W.2d 527 (Tex. App.—Dallas 1997, orig. proceeding).......................21, 22

*IFC Credit Corp. v. Specialty Optical Sys., Inc.*,
  252 S.W.3d 761 (Tex. App.—Dallas 2008, pet. denied)...................................22

*In re Bledsoe*,
  41 S.W.3d 807 (Tex. App.—Fort Worth 2001, orig. proceeding) .....................27

*In re Carnival Corp.*,
  193 S.W.3d 229 (Tex. App.—Houston [1st Dist.] 2006, orig.
  proceeding) .......................................................................................................27

*In re M.J.M.*,
  406 S.W.3d 292 (Tex. App.—San Antonio 2013, orig. proceeding).................27

*In re Noble Drilling (Jim Thompson), LLC*,
  449 S.W.3d 625 (Tex. App.—Houston [1st Dist.] 2014, orig.
  proceeding) .................................................................................................27, 31

*Jones v. Am. Flood Research, Inc.*,
  218 S.W.3d 929 (Tex. App.—Dallas 2007, no pet.) .........................................22

*Nat'l Med. Enters., Inc. v. Godbey*,
  924 S.W.2d 123 (Tex. 1996) .............................................................................40

*Paradigm Oil, Inc. v. Retamco Operating, Inc.*,
  372 S.W.3d 177 (Tex. 2012) .............................................................................20

*Penn. Fire Ins. Co. v. W.T. Wagoner Estate*,
  39 S.W.2d 593 (Tex. Comm'n App. 1931) ........................................................38

*Sec. Ins. Co. v. Kelly*,
  196 S.W. 874 (Tex. Civ. App.—Amarillo 1917, writ ref'd) ..............................38

*Sells v. Drott*,
  330 S.W.3d 696 (Tex. App.—Tyler 2010, pet. denied) .....................................30

*Spohn Hosp. v. Mayer*,
  104 S.W.3d 878 (Tex. 2003) (per curiam) ........................................................17

*State Farm Lloyds v. Johnson*,
  290 S.W.3d 886 (Tex. 2009) ..................................................................36, 38, 39

*Stromberger v. Turley Law Firm*,
  251 S.W.3d 225 (Tex. App.—Dallas 2008, no pet.) ...............................20, 21, 22

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
  300 S.W.3d 348 (Tex. App.—Dallas 2009, pet. denied)....................................23

*TransAmerican Natural Gas. Corp. v. Powell*,
  811 S.W.2d 913 (Tex. 1991) ......................................................................*passim*

**RULES**

TEX. R. CIV. P. 215.2(b) ......................................................................................17

## STATEMENT REGARDING RECORD REFERENCES

There were several court reporters during the course of pre-trial and trial proceedings. Accordingly, when TWIA requested to supplement the reporter's record, there were several filings, not all of which were separated into volumes.

The transcripts of the 2014 hearings were separated in volumes and are cited accordingly. *Example*: 1SuppRR.123 is the first volume of the Supplemental Reporter's Record containing all the 2014 hearings requested by TWIA, at page 123.

For those transcripts not in volumes (the 2013 hearings), TWIA will cite to the date of the hearing. *Example*: SuppRR.10-14Hrg.123 is the Supplemental Reporter's Record transcript of the hearing on October 14, 2013, at page 123.

For Bill of Exception exhibits, the format is as follows. *Example*: 54RR.DX.BOE.D/76-77 is Defendant TWIA's Exhibit D offered in a bill of exceptions, included in volume 54 of the Reporter's Record, at pages 76-77 of that exhibit.

## STATEMENT OF THE CASE

*Nature of the Case:* As appellant, Texas Windstorm Insurance Association ("TWIA") appeals two discovery rulings, one by each of the pre-trial courts. The lawsuit concerns an alleged breach of contract by TWIA asserted by Plaintiff League City, after League City sustained damage caused by Hurricane Ike. (CR.167-81). After trial, the trial court entered a take-nothing judgment in favor of TWIA, and League City appealed. This cross-appeal addresses a monetary discovery sanction erroneously ordered by the first pre-trial court, (CR.160), and the second pre-trial court's erroneous striking of three affirmative defenses challenging the validity of the appraisal award in this case, (CR.187-92). The take-nothing judgment should be affirmed, but TWIA appeals the monetary sanction and conditionally appeals the striking of its defenses.

*Pre-trial Courts:* First pre-trial court: Hon. Susan Criss, 212th Judicial District Court, Galveston County, Texas;
Second pre-trial court: Hon. Lonnie Cox, 56th Judicial District Court, Galveston County, Texas. (*See* Standing Ike order, CR.166, assigning all pre-trial matters).

*Trial Court:* Hon. Kerry Neves, 10th Judicial District Court, Galveston County, Texas.

*Trial Court Disposition:* After a month-long trial, the jury returned its verdict, invalidating the appraisal award and finding that the appraisal award included non-covered losses; that League City had materially breached its contractual obligations to provide prompt written notice of its loss and to keep and provide to TWIA an accurate record of repair expenses; and that the appraisal award failed to substantially comply with insurance policy terms and conditions. (CR.289-322). After considering TWIA's post-verdict motions, (CR.350-548), the trial court ordered a take-nothing judgment against League City, (CR.678-79).

# ISSUES PRESENTED

1.  Whether the pre-trial court abused its discretion in ordering a $15,000 discovery sanction when:

    a.  League City failed to demonstrate any prejudice or harm from TWIA's service of supplemental discovery a few days after they were due;

    b.  The pre-trial court offered no basis for calculating the amount of the sanction; and

    c.  Judged against the short delay, the $15,000 sanction was demonstrably excessive.

2.  Whether the pre-trial court abused its discretion and violated the Texas Rules of Civil Procedure by striking three of TWIA's key affirmative defenses to the appraisal award, as a discovery sanction, when:

    a.  TWIA raised legitimate objections to a specific set of discovery requests regarding its appraisal defenses, but the pre-trial court refused to review TWIA's objections and instead sanctioned TWIA for refusing to voluntarily waive them; and

    b.  The strict requirements for imposing death-penalty sanctions against TWIA on these appraisal defenses were not met, including because TWIA had already provided substantial discovery on its appraisal defenses and further supplemented its discovery answers on the pre-trial court's orders, and there was no indication that TWIA acted in flagrant bad faith or with callous disregard of the discovery process. (*TWIA's conditional cross-point*)

## INTRODUCTION

The trial court's entry of a take-nothing judgment in TWIA's favor is fully supported on many grounds, and will be explained in TWIA's forthcoming Brief of Appellee. There are only two narrow discovery issues in this cross-appeal and conditional appeal: (1) a $15,000 monetary sanction for a short, non-prejudicial delay in serving discovery responses, and (2) an erroneous death-penalty sanction striking three of TWIA's affirmative defenses regarding the invalidity of the appraisal award. It was an abuse of discretion to impose the excessive monetary sanction, for which there is absolutely no support in the record. TWIA also conditionally appeals the striking of its affirmative defenses in the unlikely event that this case is remanded to the trial court, because the death-penalty sanction violates the procedural and due process requirements that protect parties from precisely this sort of arbitrary penalty.

## STATEMENT OF FACTS

**A.     *League City sued TWIA for allegedly unresolved insurance claims, which became the subject of a problematic appraisal.***

In 2008, Hurricane Ike caused damage to real property owned by League City. TWIA provided windstorm insurance coverage, subject to the terms, conditions, and exclusions in the insurance policy. (CR.462-519). Under the policy, TWIA paid more than $750,000 for covered repairs. (CR.398 (Jury Question No. 5); *see also* CR.61). Yet without any pre-suit notice of allegedly

unresolved claims, League City sued TWIA on January 17, 2012, for breach of contract, punitive damages, statutory penalties, and other relief. (CR.7-18). Despite TWIA's inquiry letter to League City requesting information of the items of loss it claimed were still owed, (CR.546-47), League City never responded.

**B.** ***League City continually stonewalled on the specific bases for its lawsuit, impairing TWIA's attempts to respond to discovery, yet at the same time League City asked the court to sanction TWIA for failing to provide discovery.***

TWIA objected throughout the discovery period that it could not respond to discovery requests without information from League City specifying the claims it was contending were still unresolved. (*See, e.g.*, SCR.128, 206, 454). Yet League City continually asked the pre-trial court to intervene in discovery disputes, usually accompanied by requests for sanctions. (*See, e.g.*, SCR.109-22, 435-39).

In response to League City's First Interrogatories, TWIA objected because all the interrogatories were vague, overbroad, and unduly burdensome since they concerned a policy covering over 140 separate structures, yet the interrogatories failed to specify which covered item League City was inquiring about. (SCR.128). TWIA also objected that many requests were seeking information that was not limited by duration, was privileged, or was not relevant to the claims at issue. (SCR.127-28, 134, 137, 144-45).

League City moved to compel TWIA to supplement its responses, moved to strike TWIA's objections and claims of privilege, and moved for sanctions.

(SCR.109-22). In response, TWIA argued that League City's requests for discovery constituted an impermissible fishing expedition. (SCR.206-07). TWIA also pointed out that four of League City's interrogatories requested *all* legal and factual bases for TWIA's defenses or decisions, a violation of the discovery rules' prohibition against forcing a party to marshal all of its evidence. (SCR.207-09).

After being dragged into the discovery disputes, the pre-trial court[1] *finally* got League City to agree to "tell[ ] [TWIA] what building you're complaining about." (SuppRR.10-2Hrg.15). Yet, surprisingly, at the same October 2, 2013, hearing, the pre-trial court granted League City's Motion to Compel, struck all of TWIA's objections, and ordered TWIA to supplement its responses to League City's discovery requests. (SCR.379).

Because the pre-trial court's expansive October 2 order did not distinguish between producing privileged and non-privileged information and materials, TWIA moved to stay the order and asked the pre-trial court to reconsider the rulings and to inspect privileged materials *in camera*. (SCR.380-85). The pre-trial court granted TWIA's motion for *in camera* inspection. (SCR.392).

---

[1] The Honorable Susan Criss of the 212th District Court was pre-trial judge for this and the other Hurricane Ike cases in district court in Galveston County until December 6, 2013, when she resigned from the bench and the Honorable Lonnie Cox of the 56th District Court became pre-trial judge for the Hurricane Ike cases. (CR.166).

On October 14, the pre-trial court then re-heard League City's Motion to Compel, but with no prior notice that the motion would be re-argued. (SuppRR.10-14Hrg.37; SCR.524). The court went through TWIA's objections line by line, overruling most, but granting in part some, and modifying some of the questions. (*See generally* SuppRR.10-14Hrg). League City's counsel agreed to "make any modifications" to reflect TWIA's privilege objections. (SuppRR.10-14Hrg.21, 93). Also, in response to TWIA's oft-repeated argument that TWIA "cannot state the basis for the denial of a claim [when] . . . [w]e don't know the dollar amount or the nature of the damage" claimed by League City, the court agreed and granted in part TWIA's objection and ordered League City to rephrase its question. (SuppRR.10-14Hrg.65-68). League City also stipulated to narrowing some of the discovery issues. (SuppRR.10-14Hrg.73-74).

After League City submitted a proposed order the following day, again asking the pre-trial court to order TWIA to supplement its discovery responses, TWIA sent a letter to the pre-trial court, objecting to the lack of notice for the prior day's hearing and because the proposed order did not address any of the *numerous* modifications that the court had made to League City's discovery requests. (SCR.524). The pre-trial court did not sign an order.

The pre-trial court did not respond to any of TWIA's concerns. At an October 22 hearing on *TWIA's* Motion to Compel, League City interjected its own

-4-

argument that TWIA had not supplemented its discovery as ordered by the court, and thus League City could not take the deposition of Paul Gauthier, an independent adjuster hired by TWIA to adjust League City's claim. (SuppRR.10-22Hrg.29, 32). TWIA pointed out that League City had not filed a motion to compel based on the court's oral rulings from the October 14 hearing, for which there was no transcript yet:

> That is not in any e-mail from opposing counsel to our side. It's not in their Motion to Quash. There was no notice coming into this morning that the objection to taking Paul Gauthier on Thursday had to do with some discovery issue that he has with us on interrogatories and document requests.

(SuppRR.10-22Hrg.35). Despite objection to the lack of notice on this issue once again, the pre-trial court ordered TWIA to supplement its answers and responses to League City's discovery requests within three days and to delete its objections. (SuppRR.10-22Hrg.37-38; CR.52).

**C.** ***The pre-trial court sanctioned TWIA $15,000 to punish a minor delay, despite a total lack of prejudice or harm suffered by League City.***

With the benefit of a transcript of the October 14 hearing, TWIA served supplemental answers and responses that removed the overruled objections *and* noted the October 14 modifications, which no motion from League City or written order from the pre-trial court ever referenced. (SCR.485; 2RR.8).

However, because TWIA was a little more than a week late in serving its

supplemental discovery, League City asked the pre-trial court to "sanction [TWIA] something so they understand that your order has some meaning." (2RR.6). The court demanded TWIA explain why the discovery was late, and when told that it required client approval from personnel out of state, the court asked for specific names, to be given under oath by the afternoon. (2RR.8, 10-11, 13-15). When TWIA did not provide additional explanation for the delay in filing the supplemental discovery, the pre-trial court lambasted TWIA for being disrespectful and asked League City what it wanted the court to do. (2RR.17, 20, 24).

Despite initially complaining about League City's delay in serving supplemental discovery responses, League City then switched focus and argued that it had learned during the deposition of Paul Gauthier that he had files that had not been produced before the deposition. (2RR.19). League City asked for a "per diem amount of $5,000, and that's to capture all of the other things that might flow from the delays." (2RR.22).

TWIA responded and pointed out that Gauthier is not an employee of Texas Windstorm and he was not within its control. "He doesn't work for them. His files are not subject to their custody or control. He is not subject to Texas Windstorm's custody or control." (2RR.21). Regardless, the production of Gauthier's files was not raised in League City's original Motion to Compel, nor in its subsequent Motion to Enforce. (SCR.120-21; CR.94-104). Finally, TWIA

pointed out there was no prejudice cited in the requests for sanctions, (*see* SCR.120-21, 437-38), and League City never presented any evidence of prejudice or of incurred costs. (2RR.27-28).

Despite TWIA's objections, the pre-trial court ordered TWIA to reproduce Paul Gauthier for deposition for an additional 6 hours and to pay $15,000 as a sanction "for violation of the Court's order, which includes the amount of attorney's fees and expenses League City incurred in preparing League City's Motions and attending the hearing on the Motions." (CR.160).

TWIA asked the court to reconsider the monetary sanction order, (SCR.508-13), and set the reconsideration motion for hearing on several occasions, but the court never heard it or ruled on it. Thus, TWIA is forced to lodge this appeal, despite winning a take-nothing judgment in the underlying suit.

### D. *After the appraisal award was issued, TWIA amended its answer to assert defenses to the award.*

In the meantime, in the absence of any response from League City to its letter asking why it has been sued when it had paid over $750,000 in policy benefits and had not been advised of any unpaid, covered damages, TWIA invoked the appraisal process under the insurance policy. (SCR.1022-25). Pursuant to the appraisal provision, each party appointed an appraiser, with TWIA appointing John Mullen and League City appointing Paul Tierce. (CR.40, SCR.1024). The pre-trial court then appointed former Judge Don Burgess as the umpire. (CR.51). The

appraisal process resulted in an award of over $3.4 million signed on October 24, 2013, by Burgess and Tierce. (SCR.1030-34). Mullen did not join the award. (SCR.1030).

TWIA's review of the appraisal award detected numerous anomalies that invalidated the award. In discovery responses and pleadings, TWIA advised League City of facts underlying its affirmative defenses, including:

- The appraisal process was flawed and biased, (SCR.962-63, 969, 1392-93, 2071-72);

- Umpire Burgess individually summoned at least one League City employee to discuss the hurricane loss during the appraisal process, but he refused to give testimony, (SCR.962);

- The pre-trial court made numerous errors of law when it appointed the umpire, (SCR.969, 1392, 2071-72);

- The award included amounts which neither appraiser assigned as covered damages, and on occasions exceeded the amounts submitted by the appraisers, (SCR.1256-57);

- The appraisal award reflected amounts of loss for items never submitted to TWIA, (SCR.2072); and

- Items not presented at the time of the adjustment were included in the appraisal, (SCR.1234).

Accordingly, with a reasonable basis in fact and law, TWIA filed a supplement to its amended answer, pleading three affirmative defenses that challenged the appraisal award:

1.    The appraisal award was not an honest assessment of necessary repairs.

2.  The appraisal award and the process leading up to it were inaccurate, unreliable and/or biased.

3.  The appraisal award was the result of fraud, accident or mistake.

(CR.182).

**E.**    ***League City's attempt to seek discovery on TWIA's appraisal defenses did not comply with discovery rules, and so a dispute ensued.***

League City sought discovery on these appraisal defenses. Although it had already exhausted its limit of twenty-five interrogatories, (SCR.1009-12, 1019-20), League City nevertheless served in February 2014 a new set of twenty additional interrogatories (the "Third Interrogatories") on TWIA. (SCR.989-95). TWIA responded to this new round of discovery on February 13, and asserted several objections, including that some of them sought privileged information and that all of them violated the limit on the number of interrogatories. (SCR.989-95).

A few days later, on February 17, the pre-trial court, which had since transferred to Judge Cox after Judge Criss's retirement, held a hearing on a number of discovery motions that dealt mostly with the timing and guidelines for depositions. (3SuppRR.3-5). Following a similar refrain, League City had not given prior notice on any issues concerning TWIA's responses to the Third Interrogatories; indeed, League City had not even filed a motion complaining of TWIA's responses at that time. Despite this, League City injected the issue into this hearing. (3SuppRR.33-34).

Without any discussion of the responses TWIA had already given to this discovery, the pre-trial court asked TWIA when it could respond to the Third Interrogatories, and TWIA answered that it could do so within ten days. (3SuppRR.40). TWIA then expressed its confusion about the complaints about the interrogatories, explaining that it had already responded to them and that, before the hearing, League City had voiced no complaint about the answers. (3SuppRR.41). TWIA then assured the court that "we will do what we can," but also made clear that the "the problem is we have already referred them to all the documents we have and we have answered two pages." (3SuppRR.41).

Following the February 17 hearing, League City's counsel emailed asking TWIA to fully answer the Third Interrogatories. (SCR.880). Having provided numerous discovery responses by that point addressing the improprieties in and invalidity of the appraisal process and award, TWIA determined it had no further responses. (SCR.880).

League City then filed a Motion to Compel Appraisal Discovery and Motion to Strike Objections, claiming that TWIA had defied the pre-trial court by failing to offer additional answers that were not subject to objections on the appraisal issues. (SCR.863-65). TWIA responded and again made clear its objections to the discovery. (SCR.952-56).

**F.** *The pre-trial court summarily overruled TWIA's discovery objections and ordered TWIA to answer League City's Third Interrogatories the next day.*

During a March 12 hearing on the motion, League City and the pre-trial court focused on TWIA's isolated statement in the previous hearing that it would, in essence, respond to the interrogatories within ten days. (4SuppRR.4-5, 12). In response, TWIA made clear that it had *not* agreed to waive its objections to the interrogatories questions, but rather, in light of the tumultuous relationship between the parties on discovery matters, that it would "do what [it] can" to resolve the discovery dispute. (3SuppRR.41). TWIA further pointed out that it had already responded to the interrogatories by lodging its objections and answering some of them subject to those objections. (4SuppRR.10). The pre-trial court then attempted to grant the Motion to Compel without hearing TWIA's objections to the interrogatories, but it eventually relented and allowed TWIA to explain a couple of objections, including that the interrogatories exceeded the limit and sought privileged material. (4SuppRR.5-10). Notwithstanding that, the court summarily overruled the objections and ordered TWIA to answer the interrogatories by 5 p.m. the next day. (4SuppRR.12; SCR.1036).[2]

---

[2] The order actually says "by 4/13 [April 13, 2014]," but when considered along with the pre-trial court's statements at the hearing, it is clear the date in the order was a mistake and the real deadline was March 13.

TWIA duly supplemented its discovery responses by the pre-trial court's deadline, preserving its objections and offering even more expansive answers subject to those objections. (SCR.1230-35). Due to the short timeframe and the limited information TWIA possessed about the appraisal process (because of League City's failure to provide long-delayed discovery), TWIA could not more fully answer each interrogatory. (SCR.1230-35). TWIA further supplemented its answers a few days later to reflect the contents of an expert report it received on March 14. (SCR.1287-90).

G. *The pre-trial court struck TWIA's defenses to the appraisal award because TWIA declined to waive its objections in answering League City's Third Interrogatories.*

League City was still not satisfied, however, and asked the court to strike TWIA's defenses to the appraisal award as a sanction. (SCR.1085-88). TWIA responded by pointing out that it had twice supplemented its responses pursuant to the order. (SCR.1221-23). TWIA further discussed why such sanctions were not justified under the law. (SCR.1223-24).

At a March 20 hearing on the sanctions motion, TWIA explained that it had complied with the pre-trial court's order "to the extent of our ability." (5SuppRR.12). TWIA also advised the pre-trial court, "[w]e have said repeatedly that until we take the fact witnesses and the appraisers' depositions, we cannot further flesh out our answers." (5SuppRR.12; *see also* 5SuppRR.35). TWIA

further made clear that it would continue to supplement its answers as it conducted additional discovery into the appraisal issues. (5SuppRR.36).

The pre-trial court held an additional hearing on the sanctions motion on April 10. (6SuppRR.5). The focus of the sanction portion of that hearing was a dispute over a recent deposition of TWIA's corporate representative, Paul Strickland. (6SuppRR.8-16). Notably, as was often the case, that deposition was not the subject of any pending motion. Nevertheless, the pre-trial court verbally ordered that TWIA's appraisal defenses be stricken as a sanction for TWIA not "participat[ing] appropriately in this discovery." (6SuppRR.16). The pre-trial court signed an order striking the affirmative defenses on April 17 as a sanction for not complying with its March 12 order. (CR.187-95).

Importantly, between March 12 and April 17, TWIA repeatedly supplemented its discovery responses. It served three amended answers to the Third Interrogatories; a Third Supplemental Response to League City's Request for Disclosure; and the expert reports of Mark Elliot and Tim Lozos. (SCR.968-69, 1228-35, 1250-90, 1378-94, 2067-90). All these discovery responses provided information and further fleshed out TWIA's position with regard to the appraisal award.

### H.    *TWIA prevailed at trial, and the trial court entered a take-nothing judgment for TWIA.*

The case was returned to Judge Kerry Neves of the 10th District Court for

-13-

trial.[3]  The jury listened to three weeks of evidence accusing TWIA of failing to pay insurance coverage allegedly of some eight million dollars, and then it heard two days of testimony on behalf of TWIA.  The jury found that League City breached its obligations under the policy, which in turn prejudiced TWIA in its ability to assist in the adjustment.  Further, the jury found that that the appraisal award, League City's only damages model, was invalid for failing to substantially comply with the policy terms and provisions.  (*See generally* CR.286-326).

TWIA moved for Judgment Notwithstanding the Verdict, arguing, *inter alia*, that, (1) without the invalidated appraisal award, there was no damages evidence; and (2) that the jury's findings in TWIA's favor on its defenses merited a take-nothing judgment.  (CR.350-82).  The trial court agreed and rendered a take-nothing amended final judgment in TWIA's favor.  (CR.678-80).

League City also filed post-verdict motions, (CR.681-92), which the trial court denied on January 23, 2015, (CR.856-57).  League City now appeals the final judgment, while TWIA cross-appeals a narrow sanctions issue and preserves its conditional cross-point for appeal regarding the erroneous striking of its affirmative defenses.

---

[3] Under the Galveston County order on managing Hurricane Ike cases, pre-trial matters were handled by the assigned pre-trial judge and the cases would be tried in the court in which it was originally filed.  (CR.166).

## SUMMARY OF THE ARGUMENT

The two sanctions at issue were an abuse of the trial court's discretion to regulate discovery disputes. The excessive $15,000 sanction was to punish TWIA for being late in serving supplemental discovery responses, despite TWIA's best efforts in complying with a panoply of oral and written rulings that did not provide guidance on the permissible parameters of discovery.

Yet when TWIA complied with these orders and served its supplemental discovery—albeit a few days late—the pre-trial court railed against TWIA's supposed disrespect and imposed a disproportionate sanction, *despite no attempt by League City* to demonstrate its resulting harm or prejudice. There is absolutely no evidence in this record to support the calculation of the amount of this arbitrary fine, nor is there any evidence that TWIA's actions harmed League City. Either one of these grounds is sufficient to vacate the sanction, and considered together it is compelling that the pre-trial court erred in ordering the monetary sanction.

Later in the discovery process, the parties disputed the validity of the appraisal award. After TWIA amended its answer to assert defenses to the questionable award, League City served a host of interrogatories, in excess of its limit under the discovery rules. TWIA objected on that basis and because the questions sought privileged information, but the pre-trial court summarily overruled all of TWIA's discovery objections and ordered TWIA to answer League

-15-

City's interrogatories within one day. TWIA did precisely that, but when its answers were unsatisfactory to the pre-trial court, it imposed death-penalty sanctions against TWIA, striking TWIA's defenses to the appraisal award—premised largely on a misunderstanding that TWIA had agreed to waive its objections, which the hearing transcript contradicts. Moreover, TWIA was substantially justified in answering the questions subject to those proper and legitimate objections.

Further, the death-penalty sanctions the pre-trial court imposed were fatally defective because: (1) League City suffered no prejudice, since TWIA had served numerous discovery responses explaining its challenges to the award's validity; and (2) the death-penalty sanctions were clearly excessive in light of TWIA's minor noncompliance with the pre-trial court's order.

Despite the pre-trial court's rulings in error that hampered TWIA's ability to present its case, TWIA prevailed at trial, and the trial court that presided over the month-long trial entered a take-nothing judgment for TWIA. TWIA now asks this Court to vacate the wrongfully levied monetary sanction, and, in the unlikely event that the case is remanded for a new trial, to reverse the pre-trial court's erroneous striking of TWIA's affirmative defenses.

## ARGUMENT

### I. A Trial Court's Discovery Sanctions Order Is Reviewed For An Abuse Of Discretion.

A trial court's ruling on a motion for sanctions is reviewed under an abuse of discretion standard. "The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but 'whether the court acted without reference to any guiding rules and principles.'" *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). The trial court's ruling should be reversed if it was arbitrary or unreasonable. *Id.* at 839.

While the choice of which discovery sanctions to impose lies within the discretion of the trial court, any sanction imposed still must be "just." *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (per curiam) (citing TEX. R. CIV. P. 215.2(b); *TransAmerican Natural Gas. Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)). For a sanction to be "just," there must be (1) a direct nexus among the offensive conduct, the offender, and the sanction imposed, and (2) the sanction must not be excessive. *TransAmerican*, 811 S.W.2d at 917.

As to the first *TransAmerican* "direct nexus" requirement, a just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party. *Id.* As to the second *TransAmerican* "not excessive"

requirement, a discovery sanction should be no more severe than necessary to satisfy its legitimate purposes, which include securing compliance with discovery rules, deterring similar misconduct, and punishing violators. *Id.*; *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). The entire record must be reviewed to determine whether sanctions are warranted. *See Blackmon*, 841 S.W.2d at 852-53.

## II. The Pre-Trial Court Abused Its Discretion In Ordering A $15,000 Sanction When League City Failed To Show Any Harm That Resulted From TWIA's Actions.

Describing the proper standard for considering sanctions, the Texas Supreme Court has held that "[t]he punishment should fit the crime." *TransAmerican*, 811 S.W.2d at 917. Here, however, not only did League City entirely fail to demonstrate or even suggest that it had suffered harm or prejudice from TWIA's alleged discovery abuse, but the $15,000 monetary sanction was excessive when judged against TWIA's delay of a few days, and there is no other evidence in the record that would support an imposition of the sanction. The punishment most certainly did not fit the crime, and it was an abuse of discretion for the pre-trial court to sanction TWIA to the tune of $15,000.

### A. *League City never attempted to show any prejudice suffered by TWIA's delay in serving supplemental responses, or quantify the alleged harm.*

The pre-trial court's monetary sanction was targeted toward TWIA's minor

delay (8 business days) in serving supplemental discovery answers and producing requested documents in October 2013. (2RR.15-18, 24, 31). However, League City never attempted to show, nor did the pre-trial court ever explain, how the $15,000 sanction (nevermind the *$30,000* sanction requested by League City, *see* 2RR.24) was a remedy for any prejudice suffered by League City.[4] All League City offered in justification was that "the motion sets forth a particular per diem amount of $5,000, and that's to capture all of the other things that might flow from the delays." (2RR.22). That is not sufficient evidence to support the court's award of monetary sanction.

When a trial court assesses a monetary sanction, "there must be some evidence in the record linking the amount awarded to harm actually suffered by the party seeking sanctions." *Braden v. S. Main Bank*, 837 S.W.2d 733, 741 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *see also Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991) (court must consider prejudice). If a monetary sanction "is not tied to any evidence in the record and the basis for calculating the amount is unknown, the sanction constitutes an impermissible arbitrary fine."

---

[4] In fact, as TWIA pointed out to the pre-trial court, *there was no harm*—all of the claim-related documents responsive to League City's requests were produced months before League City moved to compel. (2RR.25; SuppRR.10-14Hrg.6 ("We produced it months ago . . . . [T]hey have our non-privileged production relative to this claim. They have had it, in many instances, over two years.")).

*Stromberger v. Turley Law Firm*, 251 S.W.3d 225, 226-27 (Tex. App.—Dallas 2008, no pet.); *see also Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 187 (Tex. 2012) ("Sanctions for discovery abuse should not be dispensed as arbitrary monetary penalties unrelated to any harm.").

TWIA made clear to the pre-trial court that League City never cited any prejudice in its motions for sanctions, (*see* SCR.120-21, 437-38), nor submitted any evidence quantifying the harm. (2RR.27-28). Although League City baldly contended in the oral hearing that the $5,000 per day sanction would "capture all of the other things that might flow from the delays" and "would encompass probably the cost of having to go and re-depose [Gauthier]," (2RR.22, 24),[5] there is no evidence in the record to support or substantiate these assertions. There is no testimony from League City's attorneys as to their incurred fees and costs; there are no affidavits. There simply is no evidence substantiating the amount and nothing in the record showing any connection between the $15,000 awarded and any harm suffered by League City as a result of the delay in filing its supplemental discovery.

---

[5] Moreover, while League City argued that the cost to re-depose Gauthier included travel costs "to have to go [to Florida] if he won't voluntarily come on a plane and come back for another deposition," that argument was mooted when the court ordered *TWIA* to produce Gauthier (and his files) for an additional six hours of deposition. (CR.160; 2RR.31-32, 34).

Yet, despite the complete lack of *any* evidence of League City's attorney's fees and expenses, the court's Sanction Order simply awarded half of the relief requested by League City for "violation of the Court's order, which includes the amount of attorney's fees and expenses League City incurred in preparing League City's Motions, and attending the hearing on the Motions." (CR.160; *see also* 2RR.24, 31). There is nothing in the record to indicate how the pre-trial court arrived at the amount of the sanction levied against TWIA.

When the basis for calculating the amount is unknown, the sanction is an impermissible arbitrary fine. *Stromberger*, 251 S.W.3d at 226-27. Because there is no evidentiary support or basis for calculation for the amount of the sanction imposed, this Court has no means to determine whether the amount of the sanction is just, as it must be to be upheld on appeal. *See Ford Motor Co. v. Tyson*, 943 S.W.2d 527, 536 (Tex. App.—Dallas 1997, orig. proceeding); *Christus Health Gulf Coast v. Carswell*, 433 S.W.3d 585, 616 (Tex. App.—Houston [1st Dist.] 2013, pet. granted). On this record, the pre-trial court's arbitrary sanction was an abuse of discretion, and should be vacated. [6]

---

[6] When no evidence supports the amount of the monetary sanction imposed, the proper action is to either vacate or render judgment that the party take nothing on that particular sanction award, not remand to the trial court for reconsideration. *Carswell*, 433 S.W.3d at 617.

**B.** *Even if there was a basis for calculation in the record—which there is not—the $15,000 monetary sanction still would be excessive.*

Even if League City had attempted to offer some basis for calculation, it is clear that the $15,000 monetary sanction is dramatically disproportionate to any supposed harm resulting from a few days' delay in providing the supplemental responses, especially given the lack of harm or prejudice. The sanctionable conduct alone does not prescribe the amount of a monetary sanction. *Stromberger*, 251 S.W.3d at 227. To review the decision of the amount of the monetary sanction imposed by examining only the conduct giving rise to the sanction would permit a "wavering standard of subjectivity" unrestrained by law or statute. *Tyson*, 943 S.W.2d at 536. Here, TWIA's delay, and (quickly rectified) violation of the pre-trial court's previous order, alone do not justify the amount of the sanction. The trial court's failure to otherwise explain how it determined the monetary sanction cannot withstand appellate review. *See IFC Credit Corp. v. Specialty Optical Sys., Inc.*, 252 S.W.3d 761, 773 (Tex. App.—Dallas 2008, pet. denied).

Moreover, the record does not show the trial court considered the availability of lesser sanctions and whether such lesser sanctions would fully promote compliance. *See Jones v. Am. Flood Research, Inc.*, 218 S.W.3d 929, 932 (Tex. App.—Dallas 2007, no pet.) (order for monetary sanction reversed where, among other considerations, record did not reflect trial court considered lesser sanctions and whether they would promote compliance). At most, the pre-trial

-22-

court paid lip service to "lesser sanctions," by asking TWIA's counsel: "So then we can say that I've explored lesser sanctions and there are none?" (2RR.29). When TWIA's counsel suggested a lesser sanction in the form of actual costs, the court simply responded, "Anything else?", (2RR.30), and then imposed the $15,000 sanction without explanation. (2RR.31). This was an abuse of discretion. *See Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 385 (Tex. App.—Dallas 2009, pet. denied). For this reason, the monetary sanction should be vacated.

\* \* \* \* \*

The lack of any prejudice or harm, coupled with the clearly excessive amount of the sanction and absence of constitutionally required notice, violate the *TransAmerican* principles and demonstrates the pre-trial court's abuse of discretion in sanctioning TWIA $15,000 for the few days' delay in serving supplemental discovery. This Court should vacate the monetary sanction.

C.    *TWIA was not dilatory in lodging meritorious objections to the discovery.*

Although the pre-trial court sanctioned TWIA on the narrow grounds of a week's delay in serving supplemental discovery, the court indicated that its motivation was far broader. After warning that it would sanction TWIA if it did not produce specific, sworn information explaining its delay, the court stated:

-23-

You have done everything you can to run the clock on this to make sure that you didn't have to [supplement discovery] . . . . I could have given you a month to come up with those answers, and the answer would not have been one bit different than it is at this moment.

(2RR.17-18).

However, the alleged discovery abuse implied by the pre-trial court could not form the basis of a sanction award. From the first time TWIA responded to League City's interrogatories and requests for production, the court rubber-stamped all of League City's motions to compel and overruled virtually all of TWIA's legitimate objections to League City's improper requests, most pertinently that because League City had not explained what damage was the basis of its suit, TWIA could not respond any further to League City's allegations. (SuppRR.10-14Hrg.65, 94-95).

Yet League City continuously moved to compel TWIA to drop all of its objections and supplement its discovery responses. Despite TWIA's well-founded objections (including privilege), and without even considering them at an initial hearing on League City's Motion to Compel, the pre-trial court struck *all* of TWIA's objections and ordered TWIA to supplement its answers and responses to League City's discovery requests. (SCR.379). Though the pre-trial court later modified that blanket ruling at an oral hearing, (*see generally* SuppRR.10-14Hrg.), no written, signed order ever reflected the changes and limitations to League City's requested discovery. TWIA never had a clear direction from the court as to the

scope of permissible discovery. Further, there were multiple occasions when the pre-trial court held a hearing on discovery issues *without notice*,[7] depriving TWIA of the opportunity to present the court with evidence regarding its objections to the impermissible discovery requests. TWIA complied with the patchwork array of oral and written orders, and duly supplemented its discovery even despite the violations of its fundamental due process rights.

As TWIA's counsel told the court, "[i]t wasn't intentional and it wasn't out of disrespect. We did the very best we could." (2RR.27). Though TWIA regrettably was late in serving the supplemental discovery, it did serve its answers and responses, without the overruled objections, but *with* notations reflecting the other modifications the court had made, including narrowing the scope of permissible requests. Thus, there is no evidence in the record to suggest that TWIA should be faulted for discovery abuse, even were this Court to look beyond the pre-trial court's stated basis—TWIA's delay—for the $15,000 sanction.

## III. The Pre-Trial Court Abused Its Discretion By Imposing Death-Penalty Sanctions On TWIA Without Meeting The Mandatory Requirements For Levying Such Sanctions. (*Conditional Cross-Point*)

In the remote event that this case is retried, this Court should reverse the pre-

---

[7] League City's Motion to Compel was heard on two occasions, the first with a single day's notice of hearing, (*see* SCR.204), and the second with no notice of hearing whatsoever. (SuppRR.10-14Hrg.37).

trial court's April 17, 2014, order imposing death-penalty sanctions that prevented TWIA from asserting important defenses to the appraisal award. Although the jury saw through myriad other flaws in the appraisal award, TWIA should have been permitted to pursue other, equally meritorious defenses that were improperly stricken.

The April 17 sanctions order was based on an unsupportable finding that TWIA waived its legitimate discovery objections at an earlier hearing, a mistake belied by the hearing transcript. And TWIA was substantially justified in maintaining its discovery objections while complying with the court's order, the sanction was an abuse of discretion.

Moreover, TWIA's conduct comes nowhere close to justifying the severe, death-penalty sanction that the pre-trial court imposed, given League City's failure to demonstrate prejudice and in light of TWIA's substantial compliance with the pre-trial court's discovery order. Further, TWIA's appraisal defenses were meritorious, as evidenced by the record. If a new trial is warranted, this Court should reverse the April 17, 2014, sanctions order and permit TWIA to raise all these defenses on retrial.

**A.** ***Texas law cabins a trial court's discretion to order death-penalty sanctions by imposing strict limitations on their use.***

Texas law permits a trial court to impose death-penalty sanctions in only the most extreme of circumstances. The same *TransAmerican* "direct nexus" and "not

-26-

excessive" requirements discussed above also control here. *See supra* at 17-18. Specifically as to death-penalty sanctions, "[i]n all but the most exceptional cases, the trial court must actually test the lesser sanctions before" imposing a sanction that precludes a decision on the merits. *In re Carnival Corp.*, 193 S.W.3d 229, 236-37 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding); *see also In re M.J.M.*, 406 S.W.3d 292, 298 (Tex. App.—San Antonio 2013, orig. proceeding). And because death-penalty sanctions raise due process concerns, such sanctions are inappropriate "unless a party's hindrance of the discovery process justifies a presumption that its claims or defense lack merit." *TransAmerican*, 811 S.W.2d at 918.

Orders striking affirmative defenses "function[ ] as a death penalty sanction." *See In re Noble Drilling (Jim Thompson), LLC*, 449 S.W.3d 625, 631 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). Striking a party's affirmative defense is "tantamount to striking his pleadings" and necessarily case-determinative. *In re Bledsoe*, 41 S.W.3d 807, 813 (Tex. App.—Fort Worth 2001, orig. proceeding). Thus, a trial court abuses its discretion if its order striking affirmative defenses cannot successfully navigate the gauntlet of safeguards that apply to death-penalty sanctions.

**B.** ***The pre-trial court abused its discretion by sanctioning TWIA for a minimal noncompliance that was substantially justified.***

1. The record belies the pre-trial court's finding that TWIA had waived its objections to the Third Interrogatories.

The pre-trial court incorrectly premised its decision to impose death-penalty sanctions on TWIA's supposed voluntary waiver of objections to the Third Interrogatories, when the record is clear that TWIA never agreed to waive its objections. The pre-trial court's faulty characterization of statements by TWIA's counsel provides no basis for sanctions.

The pre-trial court stated the reason for its order at the third and final hearing on this matter on April 10, 2014: "I just don't think that TWIA has participated appropriately in this discovery, so I am striking the three affirmative defenses." (6SuppRR.16). The court had previously made it clear that "the problem" he had with the discovery was with "TWIA [sic] objections" and the perceived failure of its counsel "to do what they say they are going to do." (4SuppRR.12). So, the court stated, "I am overruling your objections and I'm sticking with what I said." (4SuppRR.12).

In fact, the court expressly stated that it believed TWIA had agreed to waive its objections. At the March 20 hearing, when TWIA sought reconsideration of the order striking TWIA's objections, the court initially stated, "you waive all of that stuff when you stand up here in Court and say, 'We can get those interrogatories in

ten days.'  You waive it." (5SuppRR.36).  The court took the matter under advisement and then stood on its order striking TWIA's objections to the Third Interrogatories. (5SuppRR.41; CR.187-95).  But TWIA had *never agreed to waive them in the first place*.

The "agreed waiver" interpretation hinges—not on missing a deadline or failing to assert written objections—but rather on an inaccurate reading of statements at the first hearing in this matter on February 17, which this Court should independently review.  *See Am. Flood Research v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam).

At the February 17 hearing, when League City complained about the interrogatory responses and the pre-trial court asked TWIA what the "solution is going to be," TWIA's counsel confirmed "*we can work with them to try to work that [complaints to TWIA's response] out*" in the ten-day period.  (3SuppRR.40-41) (emphasis added).  He reiterated, "[W]e will do what we can" within the ten-day period.  (3SuppRR.41).  The record is plain that TWIA did *not* agree to waive any discovery objections, including its privilege objections.

Even if there were some disagreement about what the exchange at the February 17 hearing meant, two things should be clear:  First, TWIA's counsel did not agree to waive TWIA's objections to the Third Interrogatories.  Nothing in the transcript of the hearing indicates he did, and doing so would make no sense.  It is

-29-

ironic that TWIA's undertaking to work through discovery issues, or even further respond to discovery questions, was used as a way to *punish* TWIA by striking its legitimate objections to discovery. Second, miscommunications or misunderstandings occur during hearings but, as a matter of law, they do not constitute the type of egregious conduct necessary to impose sanctions. In fact, there was no order signed clarifying or documenting any supposed February 17 agreement by TWIA to waive any objections, nor any of the trial court's instructions at that hearing. There is no basis for concluding that TWIA's conduct was sanctionable.

2. <u>TWIA was substantially justified in answering the interrogatories subject to its proper objections.</u>

Regardless, it was improper for the pre-trial court to impose any sanctions on TWIA—much less death-penalty sanctions—because TWIA was substantially justified in answering the Third Interrogatories on March 13 (as ordered on March 12), subject to its legitimate objections. A threshold question before any sanctions can be imposed is whether the party was "substantially justified" in failing to comply. *See Sells v. Drott*, 330 S.W.3d 696, 708 (Tex. App.—Tyler 2010, pet. denied) (reversing monetary sanctions when failure to comply was "substantially justified"). If a party can demonstrate substantial justification for its failure to comply, then the trial court's sanctions will be reversed as an abuse of discretion. *See id.*

Here, TWIA properly maintained its objections to the Third Interrogatories, including that League City had far surpassed the maximum permitted number of interrogatories, never filed a motion to enlarge that number, and never obtained a ruling expanding that number under the Texas Rules of Civil Procedure. This is a substantial justification for TWIA's minimal noncompliance. Moreover, any perceived failure to fully comply with the trial court's March 12 order was substantially justified because the order was invalid on a number of grounds: (1) TWIA's privilege objections were not properly reviewed, despite TWIA's request; (2) the record does not show that the trial court considered TWIA's objections individually; (3) the limit of twenty-five interrogatories was never expanded, nor was this objection ruled on; and (4) ordering interrogatory responses in a single day undermined TWIA's due process rights. The sanctions order should be reversed.

**C.** ***The requirements for death-penalty sanctions were not met.***

Striking TWIA's appraisal defenses was also an abuse of discretion because the pre-trial court did not ensure that the *TransAmerican* requirements for death-penalty sanctions were met before imposing the sanction. *See TransAmerican*, 811 S.W.2d at 917-18; *Noble Drilling*, 449 S.W.3d at 631 (applying the *TransAmerican* standard to sanction striking affirmative defenses). Neither of the two mandatory requirements were met here.

1. League City suffered no prejudice from TWIA's continued assertion of objections while submitting amended and supplemental answers to the Third Interrogatories.

The order striking TWIA's appraisal defenses fails at the first step of the two-part test for imposing death-penalty sanctions. As noted above, this first part of the test requires that the record demonstrate that the sanctionable conduct caused prejudice to the opposing party. *See TransAmerican*, 811 S.W.2d at 917-18; *Blackmon*, 841 S.W.2d at 849-50. No such prejudice occurred here. In fact, the record demonstrates the *opposite*—that League City was provided with substantial discovery from TWIA concerning appraisal issues, including inaccuracies, fraud or mistake, and a failure to honestly assess the covered loss in the appraisal award. (SCR.960-66, 1250-86, 2069-90).

Nearly a month before the pre-trial court signed the April 17 sanctions order, TWIA had provided six single-spaced pages of facts and information about TWIA's position on the appraisal procedure, the absence of repair receipts, the lack of independence and partiality of League City's designated appraiser, the irregularity in Umpire Burgess talking to a League City employee during the appraisal process, and the claims for coverage of items of damages that were not covered by the Policy, among other things. (SCR.2069-90). For example, TWIA described at length the defects relating to the award, including improper items and excessive damages amounts:

> [I]t appears the panel . . . found damages that were far and away above the known cost of repair for items where those costs are known to TWIA, includes items that were never submitted by the insured for storm-related damages and for which no claim for payment had been made. The award appears to include items for which neither appraiser had requested damages, or amounts which neither appraiser submitted and in which on some occasions exceed the amounts submitted.

(SCR.2072). League City thus had ample information about TWIA's complaints with the appraisal award.

In regards to TWIA's answers to the interrogatories, League City generally complained that TWIA answered them subject to objections, but at the March 20 hearing, League City only specifically took issue with TWIA's answer to interrogatory number twelve, which asked TWIA to state its basis for claiming that the appraisal award was the result of fraud. (5SuppRR.5-6). To that and a few other interrogatories, TWIA properly answered that it "d[id] not know the answer to this question" because it had not yet taken the necessary depositions to obtain those facts. (SCR.1233 [Interrogatory 12]; *see also* SCR.1231 [Interrogatory 4], 1233-34 [Interrogatory 15]). TWIA additionally indicated that after it had obtained the relevant facts, "it might be possible to give an informed answer to this question." (SCR.1233 [Interrogatory 12]). That is not even a failure to answer, but rather a *preliminary answer and a promise to supplement*.

For all of these reasons, TWIA's minimal noncompliance, if any, did not prejudice League City, and accordingly the trial court's order imposing death-

penalty sanctions was an abuse of discretion.

>   2.  The pre-trial court's death-penalty sanction of striking TWIA's affirmative defenses is excessive in light of TWIA's conduct.

The pre-trial court's sanctions also fail the second prong of the *TransAmerican* test because they were excessive for two separate reasons.

First, the court never considered lesser sanctions before sanctioning TWIA for failing to answer the Third Interrogatories without asserting its objections as ordered. A supposed failure to comply with a single court order is insufficient as a matter of law to indicate that lesser sanctions would not be effective. *See Bair v. Hagans*, 838 S.W.2d 677, 681 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (failure to comply with one court order compelling production of documents and answers to interrogatories did not amount to "a pattern of discovery abuse"). Because there is no indication of the record of why lesser sanctions would have been ineffective, and the pre-trial court offered no reason of its own, it was an abuse of discretion to impose death-penalty sanctions without first testing lesser sanctions.

Additionally, the death-penalty sanctions are excessive when conduct does not "justif[y] a presumption that its claims or defense lack merit." *TransAmerican*, 811 S.W.2d at 918; *Blackmon*, 841 S.W.2d at 850. The type of conduct TWIA engaged in here failed to justify that presumption. TWIA substantively supplemented its responses to the vast majority of League City's Third

-34-

Interrogatories, in accordance with the pre-trial court's order. (*See generally* SCR.1230-35). This type of substantial compliance does not support a presumption that TWIA's defenses lack merit and does not warrant death-penalty sanctions. *See Butan Valley, N.V. v. Smith*, 921 S.W.2d 822, 832 (Tex. App.—Houston [14th Dist.] 1996, no writ) (death-penalty sanction unwarranted when party's actions "do not reflect a total refusal" to comply).

To the contrary, the record demonstrates that TWIA had a firm basis for its appraisal defenses. As detailed above, TWIA had produced substantial discovery on its affirmative defenses to the appraisal award. *See supra* at 13, 32-33. This good-faith participation in discovery on these defenses, and the actual substance of what was produced, demonstrates that TWIA had a legitimate legal and factual basis for its affirmative defenses and rules out any presumption to the contrary.

**D.**    ***The sanction was harmful because ample evidence at trial supported TWIA's appraisal defenses that were wrongfully stricken.***

The court that presided over the ensuing trial acknowledged at bench discussions that it was clear the appraisal process was fatally flawed and, thus, that the striking of TWIA's valid defenses meant "this thing is screwed up big time." (10RR.13; *see also* 10RR.54 (agreeing "[t]his is ridiculous how we're having to handle this"); 19RR.125 ("I've seen the dang award. It's ridiculous.")). But because that court felt bound by the prior pre-trial order, (10RR.60, 113), even though it "would certainly not have ruled" that way, (10RR.22), the trial court was

-35-

compelled to exclude evidence of the stricken defenses—evidence that confirms the strength of TWIA's stricken defenses.

First, there was ample evidence that the appraisal award was not an honest assessment of necessary repairs, or was otherwise inaccurate, unreliable, or biased. (10RR.14, 31; *see also* 10RR.17-18 (excluding TWIA's expert Lozos on this issue); 11RR.110-39, 146, 145-46, 147-60 (excluding relevant testimony from TWIA's expert, Paul Strickland, and exhibits showing Tierce lacked documentation for losses he included in appraisal); 55RR.DX.BOE.2–4; 56RR.DX.BOE.5–12; 57RR.DX.BOE.13–19; 58RR.DX.BOE.20–42 (excluded exhibits)). An appraisal that does not reflect an "honest attempt to exercise any judgment" is not enforceable. *Continental Ins. Co. v. Guerson*, 93 S.W.2d 591, 597 (Tex. Civ. App.—San Antonio 1936, writ dism'd) (internal quotation omitted); *see also State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009) (acknowledging this defense).

TWIA had evidence showing that League City's appraiser, Paul Tierce, did not honestly exercise any judgment, but instead "just thr[e]w out these numbers" in the appraisal with no substantiation whatsoever, which even the trial court agreed further constitutes "overwhelming" evidence of bias. (11RR.143; *see also* 10RR.31 ("I mean, it's clear as a bell that Tierce is absolutely biased.")). For instance, Tierce never asked for any receipts, photographs, or any other

-36-

documentation showing why previous repairs were made or how much the repairs actually cost. (54RR.DX.BOE.D/76-77, 99-100, 104-06, 109, 173-74, 184-87, 190, 194, 201-03, 206-07, 209, 215, 217-19 (Tierce's deposition)). Tierce also refused to provide receipts or other documentation supporting the losses he claimed to assess when TWIA's appointed appraiser, John Mullen, asked for them. (54RR.DX.BOE.D/270-74, 277; 55RR.DX.BOE.2–3). Tierce did not account for pre-storm condition or age of the appraised structures, (54RR.DX.BOE.D/101-02, 207), nor did he have a written description of those properties. (54RR.DX.BOE.D/140). The utter lack of documentation is particularly suggestive of fraud or impropriety—another of TWIA's defenses—given that thirty of the assessed structures were never even mentioned when League City's claim was originally adjusted in 2008. (*See* 11RR.116-18 (bill of exceptions, TWIA's expert Paul Strickland); 8RR.229-31 (Strickland's trial testimony); 54RR.DX.BOE.D/190-91, 204-05)); *Barnes v. W. Alliance Ins. Co.*, 844 S.W.2d 264, 270-71 (Tex. App.—Fort Worth 1992, writ dism'd) (upholding fraud finding as basis for invalidating appraisal award).

All this evidence supports the conclusion that League City's retained appraiser acted improperly by doing none of the work required of an appraiser and then inflating the amounts included in his appraisal. *See, e.g.*, *Continental Ins.*, 93 S.W.2d at 596 (appraisal award was invalid when the appraisers "made no effort to

secure the information or facts upon which they could base and should have exercised their judgment as to value"). These extreme irregularities in the appraisal process, coupled with the gross errors in the award itself, also substantiate TWIA's additional defenses that Tierce was biased or mistaken—even intentionally so. *See e.g.*, *Sec. Ins. Co. v. Kelly*, 196 S.W. 874, 876-77 (Tex. Civ. App.—Amarillo 1917, writ ref'd); *see also Penn. Fire Ins. Co. v. W.T. Wagoner Estate*, 39 S.W.2d 593, 595 (Tex. Comm'n App. 1931) (a grossly erroneous award "may also be considered in determining the bias and prejudice of the appraisers").

Tierce's flawed approach to the appraisal process was only compounded by Burgess's abdication of his role as umpire. (*See generally* 21RR.123-31). Umpire Burgess admitted that he had *never even seen* the policy underlying this dispute and had no idea what the policy did or did not cover. (21RR.124-25). Nor did Burgess ever ask for, or look at, any receipts. (21RR.128). And despite the Texas Supreme Court's indication in *Johnson* that "appraisers *must always consider causation*, at least as an initial matter," 290 S.W.3d at 893 (emphasis added), Burgess admitted that he failed to determine whether the alleged losses were windstorm-related, testifying that he usually does not "get into coverage or causation" when doing an appraisal. (21RR.127; *see also* 21RR.129). Instead, Umpire Burgess took the astonishing approach of simply adopting the estimate that covered the largest scope of repairs from League City's appraiser, except in those

few instances where it was "obvious" that the repairs were unrelated to windstorm. (21RR.128-31).

Obviously, to the extent an appraisal panel purports to consider and determine causation or coverage issues, the panel's competence and reliability in making those determinations could also be the subject of later challenges to the award. *See Johnson*, 290 S.W.3d at 895 ("If an appraisal is not an honest assessment of necessary repairs, that can be proved at trial and the award set aside."). Where, as here, the appraiser for one side and the umpire testified that they used an arguably defective process for deciding coverage issues, there is at least some evidence to support TWIA's defenses of bias, accident, mistake, or even fraud in the appraisal process. Tierce's and Burgess's approaches to the appraisal reflect a fundamental lack of understanding of what the appraisal process requires (if not outright wrongdoing), *see supra* 36-38, which evidences that both were incompetent to serve as appraiser and umpire, respectively, in violation of the policy requirements. (27RR.PX1/Policy084).

TWIA also proffered evidence showing that Umpire Burgess lacked the contractually required independence because of an ongoing conflict of interest. At the time he was appointed in March 2013 and for months thereafter, the law firm that employed Burgess as counsel was actively representing a party in a suit against TWIA for Hurricane Ike damage, which destroys his independence to serve

as umpire in this case. (*See* 54RR.DX.BOE.C/6; 54RR.DX.BOE.E–F); *accord Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 131 (Tex. 1996). Further, Umpire Burgess had been approached by plaintiff's counsel before his appointment and discussed being appointed umpire as a way to earn additional income. (54RR.DX.BOE.C/12-14).

In sum, the record contained substantial evidence that supported TWIA's defenses that it was forced to forgo because of the improper death-penalty sanction. This Court should reverse the April 17, 2014, sanctions order and permit TWIA to raise these defenses in the event that this case is retried.

## PRAYER

For these reasons, Cross-Appellant Texas Windstorm Insurance Association prays that this Court vacate the pre-trial court's impermissible $15,000 sanction. TWIA also prays that, in the event the case is remanded for a new trial, TWIA will be permitted to assert the affirmative defenses that the pre-trial court erroneously struck. TWIA also prays for such further relief to which it may be entitled.

Respectfully submitted,

BRACEWELL & GIULIANI LLP

By: ___/s/ Dale Wainwright___

Andrew T. McKinney IV
State Bar No. 13716800
LITCHFIELD CAVO LLP
One Riverway, Suite 1000
Houston, Texas 77056
Telephone: (713) 418-2000
Facsimile: (713) 418-2001

James R. Old, Jr.
State Bar No. 15242500
JAY OLD & ASSOCIATES, PLLC
2615 Calder Avenue, Suite 720
Beaumont, Texas 77702
Telephone: (409) 241-7252
Facsimile: (409) 419-1733

Dale Wainwright
State Bar No. 00000049
dale.wainwright@bgllp.com
Yvonne Y. Ho
State Bar No. 24055673
yvonne.ho@bgllp.com
Lindsay E. Hagans
State Bar No. 24087651
lindsay.hagans@bgllp.com
BRACEWELL & GIULIANI LLP
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Telephone: (512) 472-7800
Facsimile: (800) 404-3970

**Attorneys For Cross-Appellant**
**Texas Windstorm Insurance Association**

## CERTIFICATE OF SERVICE

I certify that a copy of the Brief of Cross-Appellant was served on counsel of record by EFile as follows on the 7th day of August 2015, addressed as follows:

Jennifer Bruch Hogan
HOGAN & HOGAN
711 Louisiana, Suite 500
Houston, TX 77002
Telephone: (713) 222-8800
Facsimile: (713) 222-8810

Gregory F. Cox
Michael R. Ramsey
THE MOSTYN LAW FIRM
6280 Delaware Street
Beaumont, Texas 77706
Facsimile: (409) 832-2703

*Attorneys For Appellant and Cross-Appellee League City*

*/s/ Dale Wainwright*
Dale Wainwright

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limitations of TEX. R. APP. P. 9.4(i)(2) because this brief consists of 9,067 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Dale Wainwright*
Dale Wainwright

# APPENDIX

Pre-trial court order issuing monetary sanction          Tab A

Pre-trial court order striking defenses          Tab B

Trial court's amended final judgment          Tab C

# TAB A

CAUSE NO. 12CV0053

| | | |
|---|---|---|
| LEAGUE CITY,<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§ | GALVESTON COUNTY, TEXAS |
| TEXAS WINDSTORM INSURANCE<br>ASSOCIATION,<br>Defendant. | §<br>§<br>§<br>§ | 10TH JUDICIAL DISTRICT |

**ORDER ON PLAINTIFF'S MOTION TO ENFORCE COURT'S ORDER AND MOTION FOR SANCTIONS**

The Court, having considered *Plaintiff's Motion to Enforce Court Order and Motion for Sanctions* is of the opinion that Plaintiff's Motions have merit and should be GRANTED in their entirety. It is therefore,

ORDERED that *Plaintiffs' Motion to Enforce Court Order and Motion for Sanctions* are hereby GRANTED. It is further,

ORDERED that Defendant TWIA shall ~~immediately serve supplemental answers and~~ reproduce adjuster Paul Gauthier for deposition for an additional six (6) hours. ~~responses to Plaintiff's Interrogatories and Requests for Production and remove objections to such discovery which were overruled by this Court on the record at the hearing on October 14, 2013~~. It is further,

ORDERED that Defendant is ordered to pay $ 15,000 as a sanction for violation of the Court's order, which includes the amount of attorney's fees and expenses Plaintiff incurred in preparing Plaintiff's Motions, and attending the hearing on the Motions.

SIGNED, this 7 day of Nw , 2013.

JUDGE PRESIDING

160

# TAB B

CAUSE NO. 12CV0053

| | | |
|---|---|---|
| LEAGUE CITY, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| v. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TEXAS WINDSTORM INSURANCE | § | |
| ASSOCIATION, | § | |
| Defendant. | § | 10TH JUDICIAL DISTRICT |

2014 APR 17 PM 12:40

DISTRICT CLERK
GALVESTON COUNTY, TEXAS

## ORDER

The Court, having considered Plaintiff's Motion to Enforce and Motion for Sanctions (Regarding Appraisal Discovery), Plaintiff's Supplemental Motion to Enforce and Motion for Sanctions (Regarding Appraisal Discovery), Plaintiff's Second Supplemental Motion to Enforce and Motion for Sanctions (Regarding Appraisal Discovery) and Defendant's responses and after hearing the evidence and arguments of counsel, the Court finds and concludes that Defendant's affirmative defenses regarding appraisal should be stricken. The Court bases its conclusion on the following:

1. On January 17, 2012, Plaintiff filed suit against Defendant for its handling of Plaintiff's Hurricane Ike claim.

2. On May 7, 2012, Defendant invoked the appraisal process, pursuant to the terms in the policy.

3. On March 20, 2013, Judge Don Burgess was appointed by the Court as the umpire, pursuant to the terms in the policy. Defendant did not object to the appointment of Judge Burgess as the umpire or Paul Tierce as Plaintiff's appraiser. In the months thereafter, the parties participated in the appraisal process.

12-CV-0053
DCORDER
Order
841292


4. On October 24, 2013, an appraisal award was signed by the umpire and Plaintiff's appraiser for $3,449,755.37. On this same day, at a hearing, Defendant stated it might seek to set aside the appraisal award. The Court ordered Defendant to supplement and provide complete responses to Plaintiff's Request for Disclosure regarding any potential appraisal defenses.

5. On November 7, 2013, the Court signed an order awarding monetary sanctions against Defendant in the amount of $15,000 for Defendant's discovery abuse related to discovery requests propounded by Plaintiff in March 2013.

6. On November 27, 2013, Plaintiff filed *Plaintiff's Motion to Enforce Court's Order and Motion for Sanctions* related to Defendant's failure to pay the $15,000 monetary sanctions.

7. On December 3, 2013 the Court issued an order on Plaintiff's Motion to Enforce ordering Defendant to pay sanctions by December 12, 2013. Defendant has ignored both of the Court's orders of November 7, 2013 and December 3, 2013. To date, Defendant has not paid these monetary sanctions as ordered by the Court. Defendant's actions demonstrate its contempt for judicial process and the inability of lesser sanctions to deter Defendant's discovery abuse.

8. On January 14, 2014, Plaintiff sent discovery to Defendant regarding Defendant's challenges to the appraisal process.

9. On February 6, 2014, Defendant supplemented its first amended answer, to include numerous affirmative defenses challenging the appraisal award. Defendant pled that (1) the appraisal award was not an honest assessment of necessary repairs; (2) the appraisal

award and the process leading up to it were inaccurate, unreliable, and/or biased; and (3) the appraisal award was the result of fraud, accident, or mistake.

10. On February 13, 2014, Defendant served its responses to Plaintiff's discovery relating to the appraisal process. Defendant's responses contained numerous objections and few answers.

11. On February 17, 2014, the Court attempted to resolve a number of outstanding discovery complaints and issues between the parties. Defendant wanted to move forward with a deposition of the appraisal umpire, but Plaintiff complained about Defendant's failure to provide answers to Plaintiff's written interrogatories concerning the appraisal process. The Court reviewed Defendant's responses, which consisted mainly of objections, with few substantive answers. The Court asked Defendant what concession it was willing to make to provide answers to the interrogatories prior to the deposition of the umpire and asked Defendant when it could provide supplemental substantive answers to Plaintiff's interrogatories prior to the deposition. Defendant made no objection to the Court considering the sufficiency of its interrogatory responses. Defendant did not seek any ruling on its objections. Defendant did not inform the Court that it could not or would not provide any further answer. To the contrary, Defendant affirmatively represented on the record that Defendant would answer the interrogatories regarding appraisal within ten days. The Court accepted Defendant's stipulation that it would provide supplemental answers within ten days and ordered the parties to proceed in that fashion.

12. On February 27, 2014, ten days after Defendant agreed and the Court ordered Defendant to answer Plaintiff's appraisal interrogatories, Defendant failed to provide any supplemental answers.

13. On March 12, 2014, Defendant appeared before the Court and was asked why it had not answered Plaintiff's interrogatories within ten days. Defendant responded "Judge that's not what you ordered; and that's not what we agreed to." A review of the transcript from the hearing on February 17, 2014 confirmed Defendant's stipulation that it would answer Plaintiff's interrogatories within ten days and the Court's order directing Defendant to proceed with answering Plaintiff's interrogatories as it had agreed.

14. On March 12, 2014, Defendant, for the first time, argued that the discovery in question was not before the Court on February 17, 2014. That argument should have been raised on February 17, 2014, and was waived when Defendant voluntarily stipulated that it would answer Plaintiff's interrogatories within ten days. Defendant also for the first time argued that it wanted a ruling on its objections before answering Plaintiff's interrogatories. Defendant's argument was inconsistent with its stipulation on February 17, 2014, that it would answer Plaintiff's interrogatories within ten days. Defendant waived its objections to Plaintiff's interrogatories by voluntarily stipulating that it would answer Plaintiff's interrogatories within ten days.

15. As the Court announced on March 12, 2014, the Court expects the attorneys appearing before it to do what they say they are going to do. Defendant expressly agreed to provide substantive answers to Plaintiff's appraisal interrogatories within ten days of February 17, 2014. Instead of providing answers, Defendant denied its earlier

representations and the Court's order directing the parties to proceed in accordance with Defendant's representation.

16. In light of Defendant's failure to comply with its stipulation regarding discovery responses and its failure to provide substantive factual answers to Plaintiff's interrogatories, the Court overruled Defendant's objections to Plaintiff's interrogatories and ordered Defendant to provide answers to the appraisal interrogatories by March 13, 2014 at 5:00 pm.

17. On March 13, 2014, instead of complying with the Court's order, Defendant amended its responses to discovery and asserted new general objections and new objections to specific questions, but few substantive answers. Defendant also asserted a new general objection to each interrogatory. For example, although Defendant has affirmatively pleaded that the appraisal award was procured by fraud, Defendant still failed to answer interrogatories inquiring whether Defendant contended that the appraisal award was procured by fraud, the basis for that contention, and the facts supporting that contention.

18. On March 20, 2014, as the Court was considering Plaintiff's motion for sanctions based on Defendant's failure to provide answers to Plaintiff's interrogatories concerning appraisal, Defendant advised the Court that it would be presenting a corporate representative on the topic of appraisal within a few days. The Court was told by Defendant "that witness will discuss the appraisal itself and his work in sorting through the appraisal in determining what the merits of the appraisal are." The Court was not advised that Defendant would be asserting attorney-client and work-product privilege claims and directing its designated corporate representative not to answer questions seeking factual information regarding Defendant's affirmative defenses challenging the

appraisal award. The Court withheld its ruling on Plaintiff's motion for sanctions in order to allow Defendant to present its corporate representative on appraisal issues.

19. On March 25, 2014, the Corporate Representative of TWIA, Paul Strickland, was deposed on various topics, including the appraisal process and the appraisal award in Plaintiff's case. When asked about the appraisal process, Strickland was frequently instructed by his Counsel not to answer questions on the basis of work product and attorney client privilege or a privilege objection was lodged prior to any answer. For example, Defendant instructed its corporate representative not to answer the following questions on the basis of attorney client and/or work product privilege:

- Can you identify for me the individual who made the decision to invoke appraisal on this claim?
- Will you identify for me the individual who made the decision not to pay the appraisal awarded at the time it was rendered?
- On what date did Texas Windstorm decide that it was not going to pay the appraisal award?
- Would you tell me the facts that Texas Windstorm relied on to support its decision not to pay the appraisal award?
- Will you identify for me any expert reports that Texas Windstorm relied on to support its decision not to pay the appraisal award?
- For the properties where Texas Windstorm's own appraiser, John Mullen, identified additional damage during the appraisal process, can you tell me why Texas Windstorm has made no additional payments to League City?
- After Texas Windstorm received the appraisal award and the materials from Mr. Mullen, did Texas Windstorm object to Mr. Mullen about the inclusion of items beyond those listed in Exhibit 5?
- Are you aware that people representing Texas Windstorm had meetings with Mr. Mullen and the appraiser?
- Are you aware of any facts that, in your mind, support an allegation that this appraisal award was the result of fraud?
- Does Texas Windstorm contend that the appraisal award was the result of an accident?
- Is the same answer going to hold if I ask you if the appraisal award was the result of a mistake?

20. Strickland also responded that he did not have enough information to answer numerous questions regarding appraisal, such as the following:

- What amount, if any, does Texas Windstorm contend should have been awarded in the appraisal process?
- Does Texas Windstorm contend that the appraisal award was the result of fraud?
- Are you aware of any facts that, in your mind, support an allegation that this appraisal award was the result of fraud?
- Does Texas Windstorm contend that the appraisal award was the result of an accident?
- Is the same answer going to hold if I ask you if the appraisal award was the result of a mistake?
- Does TWIA contend that the appraisal procedures were biased?

21. On March 28, 2014, Defendant filed its Fourth Amended and Supplemental Objections and Answers to Plaintiff's Third Set of Interrogatories. Defendant's responses continued to include numerous objections, including a general objection and objections to nearly all interrogatories. For example, Defendant objected and failed to provide a factual answer to the following questions:

- Do you contend that the appraisal award was the result of fraud? If so, please state the factual basis for this contention and identify the person(s) you contend committed fraud and the acts which you allege constituted fraud.
- Do you contend that the appraisal award was the result of an accident? If so, please state the factual basis for this contention.
- Do you contend that the appraisal award was the result of a mistake? If so, please state the factual basis for this contention.

22. On April 10, 2414, the Court held an additional hearing on Plaintiff's Motion to Enforce. As the Court explained and as the preceding findings reflect, TWIA has failed to participate appropriately in the discovery process. Section 10.001 of the Civil Practice and Remedies Code requires that each allegation in a pleading have evidentiary support; thus it is entirely appropriate for Plaintiff to inquire into the factual basis for Defendant's pleaded affirmative defenses challenging the appraisal award. Defendant's repeated failures to comply with the court's orders and to answer appropriate

interrogatories and deposition questions concerning the factual basis for its pleaded affirmative defenses challenging the appraisal award justifies a presumption that Defendant's pleaded defenses lack merit. The Court has attempted to secure Defendant's compliance through its orders overruling Defendant's objections and compelling responses to Plaintiff's interrogatories, but these lesser measures have not resulted in compliance and have not deterred Defendant from continuing to frustrate Plaintiff's legitimate attempts to discover the factual basis for Defendant's allegations. Defendant has had an additional 30 days since March 13, 2014 in which to provide substantive answers to Plaintiff's interrogatories, yet Defendant has made no effort to comply with the Court's orders overruling Defendant's objections and directing Defendant to respond to Plaintiff's interrogatories. If Defendant was unable to respond to Plaintiff's interrogatories within one day as it claimed (despite having had more than 40 days to respond before the Court ordered Defendant to answer the discovery by March 13, 2014), Defendant by now has had ample time and opportunity to comply with the Court's March 12, 2014 order, yet Defendant has refused to do so. Further Defendant has simply ignored earlier orders imposing monetary sanctions upon Defendant for discovery abuse and refused to pay monetary discovery sanctions imposed by the Court. Thus the Court has determined that the sanction of striking Defendant's affirmative defenses challenging the appraisal award is appropriate in this case.

It is, therefore, ORDERED that Plaintiff's Motion and Supplemental Motions for Sanctions are GRANTED and that Defendant's affirmative defenses regarding appraisal are hereby struck.

SIGNED this 17th day of April , 2014.

_____
JUDGE PRESIDING

# TAB C

CAUSE NO. 12CV0053 14 NOV 14 AM 10: 52

| | | |
|---|---|---|
| **LEAGUE CITY,** | § | IN THE DISTRICT COURT |
| **Plaintiff,** | § | |
| | § | |
| | § | GALV... ...K ...AS |
| **v.** | § | **10TH JUDICIAL DISTRICT** |
| | § | |
| | § | |
| **TEXAS WINDSTORM INSURANCE,** | § | |
| **ASSOCIATION,** | § | |
| **Defendant.** | § | **GALVESTON COUNTY, TEXAS** |
| | § | |
| | § | |

## AMENDED FINAL JUDGMENT

On April 30, 2014, this cause proceeded to trial. Plaintiff League City and Defendant Texas Windstorm Insurance Association appeared through their representatives and through their attorneys of record.

All parties announced ready for trial. The Court impaneled and swore the jury, which heard the evidence and arguments of counsel. The Court submitted questions, definitions, and instructions to the jury.

On May 23, 2014, the jury returned its verdict. The Court received and accepted the jury's verdict. The questions submitted to and answered by the jury and the jury's findings are incorporated for all purposes in this judgment by reference as if fully set forth herein.

Defendant Texas Windstorm Insurance Association filed its Motion to Disregard Jury Findings, For Judgment Notwithstanding the Verdict and For Entry of Judgment and cited in support thereof the jury's answers to Questions 2, 4(a, b, d, e, f), 6(a, b, d, e,), 7, 8, 9, 13, 18, 19, 20, 21, 22, and 23 and asked the trial court to disregard the jury's answers to Questions 1, 3, 4(c), 5, 6(c, f), 11, 12, and 17. The Court considered the Motion, response, reply and argument of

-1-

678

counsel, and renders judgment that League City take nothing against Texas Windstorm Insurance Association on all claims.

In conformity with the jury's verdict, it is therefore ORDERED, ADJUDGED, and DECREED that Plaintiff League City take nothing against Defendant Texas Windstorm Insurance Association. It is further

ORDERED, ADJUDGED, and DECREED that costs of court are taxed against Plaintiff League City in the sum of $23,187.32.

All relief not expressly granted herein is denied. This judgment finally disposes of all parties and all claims and is appealable.

Signed the **13 TH** day of **NOV.** 2014.

_____
HONORABLE KERRY NEVES,
PRESIDING JUDGE

679